CASE 43—INDICTMENT—APRIL 13.

# Breckinridge v. Commonwealth,

97 267
f124 341

APPEAL FROM BALLARD CIRCUIT COURT.

1. TO MAKE ONE ELIGIBLE AS SPECIAL JUDGE in a particular case it is not necessary that he should be a resident of the district in which the case is pending.

2. CONSTRUCTION OF STATUTES.—Where the Legislature enacts a law in substantially the same language as a former law upon the same subject, it must be presumed to have accepted the construction given the old law by the persons charged with its enforcement.

3. ROBBERY is the felonious taking of property from the person of another by force.

4. AN INDICTMENT FOR ROBBERY which charges that the property was feloniously taken from M against his will and by force and by presenting pistols and other weapons at him, and by putting him in the fear of immediate injury to his person, the property being at the time in his possession, is sufficient, although it does not expressly charge that the property was taken from the person of M, it being impossible to draw any other conclusion from the language used than that it was so taken.

5. EVIDENCE.—The indictment having been dismissed as to one of the defendants, who, being introduced as a witness for the Commonwealth, confessed his own guilt and implicated his co-defendant, who was being tried, it was not improper to permit the Commonwealth to show that this witness had, prior to the dismissal as to him, offered to plead guilty, this testimony being offered by the Commonwealth only after a long cross-examination of the witness, indicating that his good faith in the confession of his guilt and the implication of his co-defendant was questioned.

6. SAME—CONTRADICTION OF WITNESS.—It was not improper to refuse to permit the defendant to prove that the prosecuting witness for the Commonwealth had stated soon after the robbery and before the arrest of the defendants that the persons who committed the robbery were thoroughly masked at the time and that they did not recognize them, these witnesses having admitted that they had frequently made such statements, although they did not remember making the particular statements at the time and place laid.

7. THE ARGUMENT OF THE ATTORNEY FOR THE COMMONWEALTH in

urging the jury by considerations of public policy to the enforce-
ment of the criminal law and to the conviction of the accused
was within the line of duty of a public prosecutor.

SAMUEL K. CROSSLAND for appellant.

1. Defendant's objection to C. H. Thomas acting as special judge
   should have been sustained. A special judge is required to
   have the qualifications of a circuit judge, and one of those qual-
   ifications is a residence in the district for two years next preced-
   ing his election. (Ky. Stats., sec. 968; Const. of Ky., secs. 129,
   130.)

2. The indictment is fatally defective as an indictment for either
   robbery or larceny, because it does not charge that the money
   was taken *from the person or in the presence* of E. B. McNeal.
   (1 Wharton's Am. Crim. Law (9 ed.), secs. 846, 847, 849; East's
   Pleas of Crown., p. 707; *Idem*, foot note. 3; Glass v. Common-
   wealth, 6 Bush, 437; Commonwealth v. Brooks, 1 Duv., 151.)

3. Acts, declarations or confessions of one jointly indicted with an-.
   other can not be given in evidence against the other. (Frost &
   Hays v. Commonwealth. 9 B. M., 362; Thompson v. Common-
   wealth, 1 Met., 14; Jones v. Commonwealth, 2 Duv., 554; Hudson
   v. Commonwealth, 2 Duv., 531; Shelby v. Commonwealth, 13 Ky.
   Law Rep., 178; Shelby v. Commonwealth, 15 Ky. Law Rep., 553.)

4. The court erred in rejecting testimony as to statements by Clark
   to the effect that he could not identify the guilty parties, because
   they wore masks.

5. As the statements of Brown show him to have been an accomplice,
   his testimony should have been excluded, because it was not cor-
   roborated by any proof whatever. (Bowling v. Commonwealth,
   79 Ky., 605.)

6. The judgment should be reversed, because there was no evidence
   tending to establish guilt. (Shelby v. Commonwealth, 15 Ky.
   Law Rep.)

WM. J. HENDRICK, Attorney-General, for appellee.

JUDGE GRACE delivered the opinion of the court.

The appellant, James Breckinridge, in connection with
Wm. O'Bryan and Frank P. Brown, having been indicted
by the grand jury of Ballard county for robbery, and
tried and convicted and sentenced by the circuit court

of that county to ten years' confinement in the State penitentiary in accordance with the verdict of the jury, now prosecutes this appeal.

The first objection urged is to the special judge who tried the cause, the defendant having filed his affidavit objecting to the Hon. N. P. Moss, the circuit judge of that district. Thereupon, the clerk of the court, as required by the statutes in such cases, proceeded to hold an election for a special judge, whereupon the Hon. C. H. Thomas was duly elected. Thereupon, the defendant objected to the said Thomas on the ground that said Thomas was not a resident of the first judicial district, where this indictment was pending, it being conceded, however, in the record that he possessed all the qualifications required by the constitution and laws of this State for a circuit judge, and that he was a regular practitioner of the bar in Ballard county, and that he was not interested in or employed in this cause.

While it is true that the constitution does require a residence in the district to make one eligible for the *office of circuit judge* in that district wherein he is elected, there is no such requirement as to a special judge chosen for some particular case; the statute instead requires that he shall be chosen from the members of the bar and that he shall have the qualifications of *a* circuit judge; but not the residence in that district necessary for the office of circuit judge.

A provision substantially similar is made applicable where the lawyers present fail in making an election; thereupon, it is the duty of the Governor to appoint some one to try that particular case. It has never been the practice in the State so far as we are advised to limit the election or the designation by the Governor to some lawyer

resident in that particular district where the cause is pending. The statutes now applicable are substantially the same as those heretofore in force in Kentucky, and we assume that the legislature knew the construction given to the old law, and failing to make any change by the new law must be presumed to have accepted the construction heretofore given.

A second objection is to the indictment under which appellant was tried and convicted, a demurrer having been duly filed, overruled and exceptions taken.

The indictment reads as follows, viz.:

"The grand jury of Ballard county, Kentucky,.......... and by the authority of the Commonwealth of Kentucky, accuse James Breckinridge, William O'Bryan and Frank P. Brown, of the crime of robbery, committed in the manner and form as follows, viz.: The said James Breckinridge, William O'Bryan and Frank P. Brown, in the said county of Ballard, on the 11th day of November, 1893, and before the finding of this indictment, did feloniously take from E. B. McNeal, nineteen hundred dollars ($1,900.00), the same being gold and silver and United States currency, good and lawful money of the United States, and of the value of nineteen hundred dollars ($1,900.00), said money at the time being in the possession of said E. B. McNeal, as the agent of the American Express Company, and others, to the grand jury unknown, against the will of said E. B. McNeal, and by force, and by presenting pistols and other weapons at him, the said McNeal, and by putting him, the said McNeal, in the fear of immediate injury to his person, against the peace and dignity of the Commonwealth of Kentucky."

This indictment appears to have been drawn with great care, embracing and charging every essential element of the crime of robbery, designating the crime by its appropriate

name of robbery, naming the persons accused by the grand jury, charging that the offense was committed feloniously, designating the property taken, and fixing a value on same, alleging that it was *then*, at the time it was taken, in the possession of McNeal, as agent of the American Express, that it was taken from him, that this was done against the will of McNeal, and by force, designating the particular means used, and that it was by putting him, the said Mc-Neal, in fear of immediate injury to his person, and all against the peace and dignity of the Commonwealth of Kentucky.

These several allegations as to the commission of the offense are set out with far greater particularity than the definitions given by some of our text writers seem to require.

Mr. Greenleaf quotes and commends highly an early definition given by Lord Mansfield as follows: "Robbery is the felonious taking of property from the person of another by force." (3 Greenleaf on Evidence, 14th ed. sec. 223.) This definition, Mr. Greenleaf says, is most comprehensive and precise and apt; it does not embrace a charge that the taking was against the will of the person robbed, neither does it say in express terms that the property taken was in the actual possession of the person injured at the time of the taking, nor that it was carried away, nor that it was taken in the presence of the owner. Nor does it allege ownership at all, nor does it say that it was taken by putting the party in fear of injury to his person. And yet the same author proceeds to point out how this condensed definition, by construction and intendment of law, may at once be made sufficiently expansive to embrace every manner of the offense of robbery, as that this possession may be either actual or constructive, in that

it the property taken may be lying on the ground in the presence of the owner. And as to the force used, that it may be physical violence directly applied, or constructive by threats, or otherwise putting him in fear, and thereby overcoming his will. Other cases are found as where a person is knocked down and while insensible his property is taken. Here the law presumes it to be against *his will*. And again where force and threats of present violence with assault are such as may be reasonably presumed to excite fear, that there fear will be presumed, and need not be directly proven. Numerous cases are cited illustrating that this carrying away is little if any thing more than formal, as the slightest removal from a former position is sufficient; but it must be taken. Again it is said by our text writers that these several constructions and implications and intendments of the law are given because of the heinousness of the offense against both person and property, and of the odium in which it is justly held by the law. Again, by repeated adjudications has this law of robbery been extended so as not only to include fear of personal violence, but fear of the loss of his property, fear that his child in possession of the persons intending the robbery may be killed, fear that he may be accused of an unnatural crime.

When to these several extensions and judicial constructions and intendments of the courts applied in cases of robbery, we add the provisions of our own Code of Practice, "that an indictment shall be deemed sufficient, if it state the act constituting the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of

Breckinridge v. Commonwealth.

the case," we-readily conclude that the indictment quoted is a good indictment for robbery. True, it does not say in so many words that the property was *taken from the person of McNeal,* but it certainly says that it was taken from McNeal, after saying that he was in the possession of it at the time it was taken, and that it was taken from him by force, by pointing pistols and other weapons at him, and by putting him in fear. With these statements in the indictment, all to be taken as true on demurrer, we not only think it certain, to a common intent, to a person of common understanding that the money was taken from the person of McNeal, but that it is impossible to draw from the language used any other conclusion than that it was so taken. We think it sufficiently clear to enable the court to pronounce judgment on conviction, according to the right of the case.

In this opinion we do not intend to indicate or sanction any change in the essential elements of the law of robbery, as that the property must be taken from the person of another, or in his presence, for such, accompanied by the assault, we regard as the distinguishing elements of the crime of robbery from larceny, but only to affirm that this is sufficiently charged in the indictment in this case.

Quite a number of exceptions were taken by counsel for defense during the progress of the trial, twenty-five separate bills being filed, besides numerous others only noted in the record, many of them referring to the action and ruling of the court on questions that we think are purely within the sound discretion of every trial judge in a criminal cause, questions that do not admit of, and can not be controlled by, specific rules laid down in advance.

Some of these exceptions refer to the rulings of the court on questions of evidence, and the extent to which the court

should have indulged counsel for the defense, in showing the active part two certain detectives took in the case, and the control and influence they exercised over Frank P. Brown, one of the parties indicted, but against whom the indictment having been dismissed he was introduced by the State. His testimony showed that he was an accomplice, and as such the jury were carefully instructed as to the insufficiency of his testimony to convict the accused unless corroborated by other evidence as designated in our Criminal Code of Practice. And the court did indulge counsel at great length, and properly so, to show this control and influence of these detectives over Brown. And so the matter being a legitimate subject of evidence, and of criticism as affecting the weight to be given Brown's testimony by the jury, was fully and fairly before the jury, and we think the court did not abuse a sound discretion in refusing greater latitude.

Again, counsel for appellant complains that the Commonwealth was permitted to show that at the previous court Brown offered to plead guilty to the charge against him. This testimony, however, was only offered by the Commonwealth after other testimony, and after a long cross-examination by the defense, indicating that the good faith of Brown in his confession of guilt of himself, and the implication of Breckinridge, had been and was questioned, In this view we think his offer to plead guilty was competent.

Other exceptions by defendant go to the refusal of the court to hear other and further testimony to the effect that McNeal and possibly some other of the witnesses for the Commonwealth had said, soon after the robbery and before the arrest of either of the parties afterwards indicted, that the parties who committed the robbery were thor-

oughly masked at the time, and that they did not recognize them. As to such questions in laying the foundation for supposed contradiction, the witnesses said that they did not remember making the particular statements at the time and place laid, and to the persons named, but that such were the facts, and that they had often said after said robbery that the robbers were heavily masked and that they did not recognize them. All this it will be observed was before the arrest of either of the defendants, and at most would have been but the expression of an opinion as to whether after or when they saw these same parties again they would be able to identify them.

The testimony offered involved no contradiction of the evidence of the witnesses given on the stand.

Other exceptions were taken to the speeches by the Commonwealth's attorney and his assistant, in commenting on the law and testimony in the case, and in urging the jury by considerations of public policy to the enforcement of the criminal law, and to the conviction of the accused.

On this line we deem it sufficient to say that the arguments seem to us to be within the line of duty of a public prosecutor, and that if all the exceptions taken to the speeches had been sustained, we can not conceive much that would have been left for the attorneys for the State to have said.

We have thus spoken of those exceptions in a general way, time and space not permitting a minute notice and separate description of each.

We think the instructions given embrace substantially the law of the case, and without prejudice to the substantial rights of the accused. We do not deem it necessary to comment on the testimony further than to say, that if believed by the jury, it was sufficient to authorize the conviction,

and that of its credibility and value the jurors are the sole and exclusive judges.

Certain it is, that a most earnest, vigorous and able defense was made by counsel for his client, notwithstanding which the jurors under oath, found to the exclusion of all reasonable doubt that the accused was guilty, and this finding was approved by the trial judge.

We do not find such error in the record as to authorize us to set aside the finding of the jury and judgment of the court.

Wherefore the judgment is affirmed.