## COURT OF APPEALS,
### March 28, 1911.

## THE PEOPLE v. LAJAMA MADAS.

(201 N. Y. 349.)

1. ROBBERY—MURDER WHILE ENGAGED IN.

In order to prove the crime of robbery it is unnecessary to show that the property taken belonged to the one having it in charge, or that it was taken from his person, provided it was unlawfully taken in his presence against his will and by means of force or fear. (Penal Law, § 2120.) If the act is done by a person armed with a dangerous weapon, or by one aided by an accomplice actually present, it is robbery in the first degree. (Penal Law, § 2124.)

2. SAME—EVIDENCE.

On examination of the evidence on conviction under an indictment for homicide containing two counts, one for murder committed while engaged in the commission of a felony and another for murder committed willfully, feloniously and with malice aforethought, *held*, that a case was made for the consideration of the jury under the count of the indictment charging the homicide while committing a felony and also that the evidence tended to show that the defendant fired the fatal shot with premeditation. deliberation and malice.

3. SAME—ANTE-MORTEM STATEMENT BY PERSON UNABLE TO SPEAK.

The person killed made an ante-mortem statement; he was unable to speak by reason of a tube placed in his windpipe to enable him to breathe after an operation required by the wound had been performed upon him; he answered questions by a nod of or by shaking his head; was conscious and intelligent; comprehended what was said to him, and had no hope of recovery. He identified the defendant as the person who shot him by pointing to him with his hand. *Held*, that the declaration of the deceased, although made by acts instead of words, was competent as a dying declaration.

APPEAL from a judgment of the Supreme Court rendered April 1, 1910, at a Trial Term for the county of Kings, upon

a verdict convicting the defendant of the crime of murder in the first degree. The indictment against the defendant contains two counts, one for killing Selig Kohn while the accused was engaged in the commission of a felony, and the other for killing him willfully, feloniously and of malice aforethought. The case was sent to the jury on both counts.

The facts, so far as material, are stated in the opinion.

*Edward J. Reilly* and *Fred G. Milligan* for appellant. The crime of robbery in the first degree not having been established by legal competent evidence the verdict of the jury should be set aside and a new trial granted. (*Bloomer v. People,* 3 Keyes, 9; *People v. O'Neil,* 4 N. Y. Supp. 226.) It was error to admit in evidence the testimony of Edward Glennon, the coroner, inasmuch as it was not an antemortem statement. (*People v. Cascone,* 196 N. Y. 317; *People v. Kennedy,* 164 N. Y. 449; *People v. Mondon,* 103 N. Y. 211; *People v. Molineux,* 168 N. Y. 264; *People v. Haynes,* 6 N. Y. Crim. Rep. 103; *People v. Willett,* 92 N. Y. 32.)

*John F. Clarke, District Attorney* (*Leroy W. Ross* of counsel), for respondent. It was unnecessary to establish the crime of robbery in the first degree in order to convict the defendant under the indictment. (*People v. Morse,* 196 N. Y. 306.) The evidence of Edward Glennon, the coroner, was properly admitted. (*People v. Del Vermo,* 192 N. Y. 470; *People v. Governale,* 193 N. Y. 581; *People v. Morse,* 196 N. Y. 306.)

VANN, J. In January, 1910, Hyman Kohn carried on a private bank and ticket office on the ground floor of No. 120 Manhattan avenue in the city of Brooklyn, and Tobias Hollander was his cashier and manager in charge. On the even-

ing of January 3d, 1910, after nine o'clock, when the office had been closed in readiness to lock up, the defendant came in said banking office and bought a postage stamp. The next morning at about eight o'clock he again purchased a stamp and two hours later a paper. On the morning of January 6th, 1910, Mr. Hollander had placed in the front window of the office where they were plainly to be seen, two thousand rubles in Russian bills. Shortly afterward and at about eight o'clock the defendant came in and bought a stamp and at ten o'clock came in again and bought "a Polish letter paper." All the morning he had been in a saloon diagonally opposite the banking office with several associates, including Fisher and Wasylow, who were jointly indicted with him, except as he left for a few moments at a time on several occasions. At eleven o'clock he entered the banking office again, bought a Polish newspaper and went out. At about the same time he was seen to enter the saloon, say a few words to his associates and go out. Shortly afterwards he entered the banking office again and when asked by Mr. Hollander what he wanted made no reply, but went near the front window and stood there. Fisher and several other men who had been associating with the defendant in the saloon came in right after him. At this time Mr. Hollander was standing behind the counter and Selig Kohn, a brother of the proprietor, was seated in a chair on the opposite side of the room. Fisher approached the counter, and inquiring of Mr. Hollander the price of a ticket to Europe, was told it would be thirty-three dollars. He asked, " Have you anything cheaper ? " whereupon Hollander turned around with his back toward Fisher to consult a list on the wall. While Hollander was looking at the list Fisher said, " Never mind," and as Hollander turned around to face him, Fisher pointed a revolver at him and said: " Hands up." One of the other men jumped over a glass partition and seized some of the money in the window,

while another caught hold of Selig Kohn. Selig tried to push the men near him out of the office and was struggling with them when the defendant, who had been standing by the window, came up close to Selig, and, holding a revolver within two feet of his head, shot him in the neck. He fell to the floor mortally wounded and died the next day. All the men then ran out, except one who covered Hollander with his revolver for a moment and then he ran out also. Five hundred rubles, worth over $200 in American currency, were missing from the window, but one bill for one hundred rubles was found near the door. Neither Selig Kohn nor Hollander was armed, but all the confederates held revolvers in their hands when in the store. Fisher and the defendant were arrested on the street right after the shooting and a revolver was found on each, and on the defendant a dirk also. The revolver taken from Fisher was fully loaded, while that taken from the defendant had four undischarged cartridges and one shell of a cartridge that had been fired. The cartridges were loaded with semi-smokeless powder and the bullets therein were of the same size and make as the one found in the dead body of Selig Kohn. The empty shell was in all respects like the shell of the loaded cartridges. No powder marks were seen about the bullet wound, which was in the neck about two inches below the Adam's apple. The bullet severed the windpipe, passed through the region of the right lung and was found in the muscles of the back. In the opinion of the physician who conducted the autopsy the wound was the cause of death, through hemorrhage and shock.

No testimony was given by the defendant or by any witness in his behalf, as both parties rested at the close of the case for the People.

If one of the defendant's confederates in fact seized the money, in the eye of the law the defendant seized it also, the same as if each had laid his hands upon it at the same time

and they had jointly carried it away. The evidence tended to show that the defendant and his associates were acting in concert to accomplish the common purpose of robbing the bank, and if so they were accomplices in taking the money, and the act of any one in aid of the common purpose was the act of all. (*People* v. *Giro,* 197 N. Y. 152, 157.) In order to prove the crime of robbery it was unnecessary to show that the rubles taken belonged to Hollander, or that they were taken from his person, provided they were unlawfully taken in his presence, against his will and by means of force or fear. (Penal Law, § 2120.) If the act was done by a person armed with a dangerous weapon, or by one aided by an accomplice actually present, it was robbery in the first degree. (Id. § 2124.) It is clear from the facts stated, as well as from others which we deem it unnecessary to mention, that a case was made for the consideration of the jury under the first count of the indictment.

The evidence also tended to show that the defendant himself fired the fatal shot with premeditation, deliberation and malice. The jury could have found from the circumstances that he intended to kill, and not simply to frighten or disable, and, hence, the second count of the indictment was also sustained by the evidence. The charge was fair and adequate, and no exception was taken thereto. The verdict was not against the weight of evidence, nor against law, nor does it appear that justice requires a new trial, and we see no reason for disturbing the judgment of conviction, unless some exception raised an error of law.

We have examined all the exceptions and find but one that requires the expression of consideration. On the day of the homicide, at about four o'clock in the afternoon, one of the coroners of Kings county went to the Williamsburg Hospital and there saw the deceased, informed him that he was a coroner, and asked him if he wanted to make an ante-mortem

statement. Selig Kohn nodded his head, for he was unable to speak by reason of a tube placed in his windpipe to enable him to breathe after an operation required by the wound had been performed upon him. He was conscious and when the coroner asked him if his name was Samuel Kohn he nodded his head. When asked if he lived at 147 Huron street, he also nodded. The Coroner then asked him, " Do you now believe you are about to die? " Kohn answered in the affirmative by nodding in the same way. The coroner further asked him, " Have you any hope of recovery from the effects of the injury you have received? " The answer was, " No," conveyed by shaking the head. The coroner then asked him, " Are you willing to make a true statement how and in what manner you came by the injury from which you are now suffering," and the answer signified by nodding was, " Yes." He was asked if he could identify the man who shot him and again he nodded. The coroner told an officer to bring in the two prisoners, the defendant and Fisher, who were in the outer room. Kohn at this time was lying on the bed, propped up, and when the coroner asked him to identify the man who shot him he pointed his left hand at the defendant. When asked if it was in the store or office of his brother he answered, " Yes," by a nod of his head and made the same answer in the same way to the question whether it was between eleven and twelve in the day. When asked to sign his name to the statement that he had made, as reduced to writing by the coroner, he was unable to write but touched the pen and made a cross. He understood English, was conscious and intelligent, comprehended what was said to him and had no hope of recovery. The written statement was not received in evidence.

The declaration of the deceased, although made by acts instead of words, was competent as a dying declaration. No declaration was made or act done to implicate the defendant until after Mr. Kohn had stated in the only way that cir-

cumstances permitted that he believed he was about to die and had no hope of recovery. The foundation laid for the admission of his declarations was sufficient within the authorities. (*People* v. *Morse,* 196 N. Y. 306, 310; *People* v. *Governale,* 193 N. Y. 581, 591; *People* v. *Del Vermo,* 192 N. Y. 470, 487; Underhill's Cr. Ev. § 103; 2 Wigmore on Evidence, §§ 1439, 1440.) The evidence was not competent to show the effect of the declarations upon the defendant, because, as he did not understand English, he could make no reply, and it was not received for that purpose. It was offered, objected to, ruled upon and received as a dying declaration only, and, hence, does not come within the authorities relied upon by the appellant, such as *People* v. *Cascone* (185 N. Y. 317).

We find no error in the record, whether raised by an exception or not, and, hence, the judgment of conviction should be affirmed.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; HAIGHT, J., absent.

Judgment of conviction affirmed.