## Jones v. Commonwealth.

(Decided December 16, 1913.)

### Appeal from Greenup Circuit Court.

1. Homicide—Self-defense—Suspension.—One who brings on the difficulty by his own wrongful act forfeits his right to plead self-defense, and a challenge, an assault, a personal affront, or insult reasonably calculated to provoke an assault from another, is usually regarded as a sufficient cause of provocation.

2. Homicide—Self-defense—Suspension—Trial—Instructions.—On a trial for homicide an instruction depriving the accused of the right of self-defense if he raised a dispute with the deceased

about the line between their respective farms, and by reason thereof did bring on and cause the difficulty, was erroneous, the raising of such a dispute not being a sufficient cause of provocation.

3. Appeal and Error—Homicide—Manslaughter—Instructions.—On a trial for homicide, evidence considered, and the failure to give an instruction on manslaughter held to be error.

4. Homicide—Evidence—Dying Declaration.—Dying declarations may be made by means of questions and answers, and need not necessarily be either written or spoken, but any method of communication between mind and mind may be adopted that will develop the thought of the declarant, as a pressure of the hand, a nod of the head, or a glance of the eye.

5. Homicide—Evidence—Dying Declaration—Admissibility—Weight. —The fact that certain answers in a dying declaration were oral and others were made by means of a nod is not fatal to its admissibility, but is a circumstance to be considered by the jury in connection with the other circumstances surrounding the transaction in determining the weight and credibility of the declaration.

6 Homicide—Trial—Admonition to the Jury.—In admonishing the jury to try the case according to the evidence, it is not proper for the court to specify, and thus give undue prominence to, any particular portion of the evidence.

H. R. DYSARD, A. S. COOPER, W. T. COLE, E. E. FULLERTON and E. D. STEPHENSON for appellant.

C. H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Thomas Jones, who was convicted of murder and given a life sentence, seeks a reversal of the judgment.

Appellant and the deceased, Joseph Eggers, owned adjoining farms and their relations were friendly. It was reported to appellant that the deceased was cutting wood on his property. After receiving this information appellant put on an overcoat, in which there was a revolver, placed his deed in his pocket, got on a mule and started to the point where the wood was being cut. While *en route* he met Garland Bradley, a nephew of the deceased. Bradley says that while appellant was talking to him appellant said: "Joe Eggers is a God durned rascal, and he is cutting wood on me. I am going to show you. Watch old Joe Eggers run. If one law

don't work I will make me a law of my own that will work." Appellant denies that he made these remarks. When appellant reached the point where the two boys were at work cutting wood he inquired where their father was and was informed that he was at the house. Appellant then went to the house of the deceased. When he arrived he called to the deceased, who came to the door. He asked deceased if he knew that he was cutting on his (appellant's) land. Deceased replied that he was cutting on his own land and asked appellant if he had a deed to the land. Appellant said that he had. Appellant then asked deceased if he had a deed. Deceased said that he had, but that his deed was in town. Appellant then asked deceased to go with him and show him the line. They went to the point where the wood was being cut. According to Clifford Eggers, the eleven year old son of the deceased, his father pointed out the line to appellant. Appellant said he was going to throw the wood into the creek. His father said no, he wasn't. They then went on down to a sycamore. His father put his hand on the sycamore and appellant shot him. There was also proof of a dying declaration of Eggers to the effect that appellant shot him over the line, and that he wasn't doing anything at the time. According to the appellant, he pointed out his line when he reached the field. The deceased stated that that wasn't the line, and told appellant to come on down and he would show him where the line was. After going down a piece, deceased pointed to four little trees and told appellant that if he wanted to know where the corner was, there was the corner. Appellant said "You know better than that, Joe Eggers, and I forbid you cutting any more wood on here." Appellant then wheeled his mule around to go the other way. Deceased grabbed a club and knocked appellant off the mule. While deceased was attempting to strike appellant again, appellant fired two shots, one of which struck the deceased, but the other lodged in the neck of the mule.

The court gave no instruction on manslaughter, but instructed on murder and self-defense, and then qualified the self-defense instruction by instruction No. 3, which is as follows:

"The jury are further instructed that if you shall find and believe from all the facts and circumstances

proven in evidence beyond a reasonable doubt that the defendant, Thomas Jones, at a time when he was not in danger of death or great bodily harm at the hands of the deceased, Joseph Eggers, armed himself with a pistol, and thus armed went to the home of said Eggers for the purpose of killing him or doing him some great bodily harm, and finding him at his home, with the intention of bringing on a difficulty and consummating his said purpose, if any he had, did, for said purpose and in pursuance thereof, raise a dispute with said Eggers about the line between their respective farms and by reason thereof did bring on and cause the difficulty in which said Eggers was shot and killed, and that defendant willingly engaged in the difficulty, if any, with said Eggers, in which he was killed, then and in this event the defendant is not excusable for such killing on the ground of self-defense or apparent necessity therefar as indicated in instruction No. 1 or No. 2.''

It is settled law that one who brings on the difficulty by his own wrongful act forfeits his right to plead self-defense, Cockrill v. Commonwealth, 95 Ky. 22, 23 S. W. 659, and a challenge, an assault, a personal affront or insult reasonably calculated to provoke an assault from another, is usually regarded as a sufficient cause of provocation. Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801. It will be observed that instruction No. 3 deprived the accused of the right of self-defense if he raised a dispute with the deceased about the line between their respective farms, and by reason thereof did bring on and cause the difficulty. Manifestly the accused had a perfect right to go to the deceased and enter into a discussion with him as to the proper ocation of the dividing line, and we are not prepared to announce the rule that one who engages in a dispute with his neighbor over the location of a dividing line between their farms thereby forfeits his right of self-defense if his neighbor attempts to kill him. Since a mere dispute is not sufficient provocation, and it does not appear that the accused was guilty of any act or used any language reasonably calculated to provoke an assault, it follows that no instruction qualifying the right of self-defense should have been given.

We are also of the opinion that the trial court should have given an instruction on manslaughter. Where

there is any evidence that the accused was guilty of manslaughter, the question is always for the jury. According to appellant's evidence, the deceased traded at his grocery, and he and deceased were on friendly terms. When appellant reached the home of deceased he made no attempt to harm him in any way. Together they went to the point where the timber was cut. During all this time the discussion was altogether friendly, and there was no demonstration of hostility on the part of the accused. After they reached the disputed land the difficulty suddenly arose. Under these circumstances it was for the jury to say, if they believed the defendant guilty, whether the shooting was done with malice aforethought, or in sudden affray and without previous malice.

Complaint is made of the admission of the dying declaration of the deceased. Though there was no objection to this evidence, we deem it proper to discuss the question in view of another trial. It is not contended that the dying declaration was not made at a time when the deceased was *in extremis* and had abandoned all hope of recovery, but insisted that the declaration was not admissible because of the manner in which it was made. It appears that the declaration was in the form of answers made by the deceased to questions propounded by his brother-in-law, Sam Alexander. The first question was, "Who shot you?" The deceased answered, "Tom Jones." The next question was, "What made him do it?" The deceased answered, "He shot me over the line." The next question was, "You and Tom have a fight or did you make any attempt to hit Tom before he shot you?" The deceased replied by shaking his head (indicating "no"). The next question was, "Did you make any attempt to use any club or something like that, or did you have anything to hit him with; a club or anything?" The deceased answered by shaking his head violently (indicating "no"). After the deceased was carried into the house he asked to have his feet put on the floor, and lived but a few minutes. It is argued that the only material portion of the dying declaration was the answer that the deceased had not attempted to strike the accused, and as this answer was made by a nod of the head, it should not have been received in evidence, in view of the fact that deceased showed that he was not speechless by using his voice both before and after the answer was made. It has long been

the established rule in this state, as well as in many other jurisdictions, that dying declarations may be made by the means of questions and answers, and need not necessarily be either written or spoken, but any method of communication between mind and mind may be adopted that will develop the thought of the declarant, as a pressure of the hand, a nod of the head, or a glance of the eye. Mockabee v. Commonwealth, 78 Ky. 380, 1 R. C. L., sec. 88, p. 543; People v. Madas, 201 N. Y. 349, 94 N. E. 857, Ann. Cas. 1912 B, 229. In view of this rule, we do not regard the fact that certain answers were oral, while others were made by means of a nod, as fatal to the admissibility of the declaration, but as circumstances to be considered by the jury in connection with the other circumstances surrounding the transaction in determining the weight and credibility of the declaration

It is conceded that the court gave the following admonition to the jury; "I want you to try the case alone on the evidence given you by the witnesses on the witness stand, including the dying declaration of the deceased, Joseph Eggers, which, under the Kentucky law, is competent evidence, and return into court a just, true and honest verdict." Though proper objection and exception to this admonition were not saved by the accused, we deem it necessary in view of another trial to say that it is not proper, in admonishing the jury to try the case according to the evidence, to specify, and thus give undue prominence to any particular portion of the evidence.

Judgment reversed and cause remanded for a new trial consistent with this opinion.