STATE *v.* CHARLES HACKLE

(No. 6897)

Submitted May 12, 1931.   Decided May 19, 1931.

*Everett F. Moore* and *John C. Hopkins,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

486

LIVELY, JUDGE:

Convicted of robbery, being armed with a dangerous weapon, and sentenced to confinement for 20 years, defendant prosecutes error.

The indictment charges that Charles Hackle, William Hall and Jim Goodnight, being armed with a dangerous weapon, did make an assault on Lena Kershuk feloniously and put her in bodily fear and certain money of the value of fifty dollars, the money and property of John Kershuk from the person and against the will of the said Lena Kershuk feloniously and violently did steal, take and carry away. Defendant elected to be tried separately with the above stated result.

According to the evidence of defendant and his co-indictees, they, at the suggestion of Hall who stated that his brother, a few days before, had found three and one-half gallons of liquor on the Bloyd farm within a short distance from Moundsville, in Marshall County, took defendant's car and drove from Moundsville to the Bloyd farm, which they searched for concealed liquor; that they found none, but did find a barrel of mash concealed in the ground and covered up with brush and loose earth about five hundred yards from the residence on the Bloyd farm; that while they continued their search, being at all times together, Mrs. Kershuk came out of the house in her yard and exhibited a loaded shotgun which she pointed at them and asked them to come to the house if they wanted liquor and she would give them a drink, at the same time making some indecent gesture with her clothes; that they were at no time within a 125 yards of the house and being unsuccessful in their search for liquor, returned to their car which they had parked in the lane leading from the public road up to the Bloyd house and drove back to Moundsville, where they were all arrested that afternoon. According to the evidence of Lena Kershuk, she and her three children, ages 2, 5 and 7 years, respectively, were preparing to eat their noonday meal when the boy of seven years informed her that a man was in the house searching it. She then discovered him searching her rooms and that he entered her living room, raised up the mattress and found the money

belonging to her husband in a handkerchief under the mattress, being fifty dollars, in two twenty-dollar bills and one ten-dollar bill, which he had saved to pay as rent on the farm; that when he took the money she got her shotgun and tried to prevent its being taken and he presented a pistol and threatened to shoot her, when she dropped the shotgun and he took the money and went away. At the time, she said she saw, through the window, two other men near the house. She immediately started to the filling station of Joe Tkach about one-half hour's walk from her house for the purpose of obtaining officials, and discovered the parked car, describing it, and giving the license number which she noticed at the mouth of the lane leading from the hardroad to her house. After she got out on the road on her journey to the filling station she noticed this same car pass her going towards Moundsville with the men who had robbed her and two other men therein. Upon arriving at the filling station, she informed Joe Tkach of what had happened and he telephoned the sheriff. The sheriff and deputy immediately came out to the Bloyd place and receiving the details of the alleged robbery, went back to Moundsville and by use of the license number of the car, found and arrested defendant and put him in jail. The same afternoon, the two co-indictees were arrested and also put in jail. Mrs. Kershuk came to the jail and identified defendant as the man who had taken the money. According to Joe Tkach's testimony, which corroborated that of Lena Kershuk with respect to her coming to the filling station and giving information, he went that afternoon about five o'clock to the dwelling house where the robbery was supposed to have been committed and found fresh tracks leading from an oatfield towards the house and one large track which he followed to within twenty or thirty feet of the house where the character of the ground made it impossible to follow the track further. He also found, about twenty yards from the house, the same footprint leading away from the house which he followed about 150 or 200 yards when it was joined with other tracks which proceeded out toward the hardroad. The officers simply detail the information leading up to the arrest, the arrest, and statements made by the

prisoners with respect to their movements that day. Enough of the main parts of the evidence has been detailed for the purpose of showing that there is a sharp conflict in the evidence for the state and that of defendant. Defendant and his co-indictees say they were never in less than 125 yards of the dwelling on that day; while the prosecuting witness says that defendant entered her house and with his pistol put her in fear and took the fifty dollars from under the mattress.

One of the assignments of error is that the evidence is insufficient to convict the prisoner of any crime. To sustain this point of error, *State* v. *Flanagan*, 26 W. Va. 122; *State* v. *Bennett*, 93 W. Va. 548; and *State* v. *Dudley*, 96 W. Va. 481, and like cases are cited where this Court has held that the evidence in those cases, circumstantial in character, was not sufficient. to convict, beyond reasonable doubt. In this case, we have a sharp conflict in the evidence. If the jury believed the prosecuting witness, there was ample evidence upon which to sustain a conviction. On the other hand, if the jury believed the defendant and his witnesses, then there was no crime whatever committed by him. The jury believed the woman and not the defendant and his co-indictees. They saw the witnesses, their manner of testifying and so did the trial judge. The weight of verbal testimony and credibility of witnesses are always a question for the jury and not for this Court. That rule of law is so well settled that citations would be wearisome. As a corollary of this well established rule it has been consistently held by this court in considering a motion to set aside a verdict as contrary to the evidence, all of the oral evidence of the movant which is in conflict with that of the successful party must be discarded, and then if such evidence which remains, together with all the justifiable inferences which the jury could reasonably draw therefrom, is sufficient to sustain the verdict, the motion should be refused. This is but another way of saying that the jury is the exclusive judge of the weight of evidence and credibility of witnesses. Taking the evidence of the prosecuting witness as true (and the jury, by its verdict, has said that it was true), there is evidence sufficient to sustain a verdict against

defendant for the commission of a crime. The weight of evidence does not depend upon the mere number of witnesses. *Jaggie* v. *Davis Colliery Co.,* 75 W. Va. 370. It would sustain a verdict for grand larceny.

But does the evidence convict defendant of robbery, being armed with a deadly weapon? This query is raised by defendant's motion in arrest of judgment; by his instruction, refused, telling the jury that they should not convict him of armed robbery; and by defendant's instruction offered which would have told the jury what verdicts they were warranted in finding under the evidence. The trial court took the view, and so instructed the jury, that only two verdicts could be rendered under the evidence, namely, verdict of guilty as charged in the indictment; and verdict of not guilty.

We have no statutory definition of robbery. The common law prevails in this state, when not changed by constitution or laws. We must, therefore, look to the common law for its definition. Many text writers and courts have attempted to define the crime at common law. *State* v. *McAllister,* 65 W. Va. 97, in first point of syllabus says: "Robbery at common law, as defined by text writers, is the felonious and forcible taking from the person of another of goods or money to any value, by violence or putting in fear." Same definition in *State* v. *McCoy,* 63 W. Va. 69. And in *State* v. *Williams,* 98 W. Va. 458, 467, an instruction was approved which defined robbery as theft from the person, or in the presence of the *owner,* accomplished by violence or by putting him in fear. Bishop's New Criminal Law, Vol. 2, sec. 1156, says: "Robbery is larceny committed by violence from the person of one put in fear." In the foot notes, definitions are given by Coke, Hale, Hawkins, East, Blackstone and Lord Mansfield. Some of these definitions are fuller than others, but all are alike in essentials, and accord with the definition stated in *State* v. *McAllister, supra.* Blackstone defines robbery as "the felonious and forcible taking, from the person of another, of goods or money to any value by violence or putting him in fear." Perhaps the best definition is that stated in 34 Cyc. 1796, as follows: "Robbery, at common law, is the taking with intent to steal, property in the possession of another,

from his person or in his presence, by violence or by putting him in fear.'' The statement in *State* v. *Williams, supra,* is, therefore, not technically correct. The taking need not be from the *owner.* Robbery is an aggravated larceny, a taking of something of value from another by putting him in fear. It is compounded of an offense against property and the person. Robbery with a dangerous weapon is regarded as a more serious crime than when committed without such weapon; and our statute, Code 1923, chapter 144, section 12 (Code 1931, 61-2-12), fixes the minimum punishment for armed robbery at ten years' confinement, without a maximum; but if the robbery be not so committed, the minimum is five years. So much for the crime and its penalty. We return to the query: Was the crime of robbery, as charged, committed by defendant under the evidence of the prosecuting witness? The money taken was alleged in the indictment, and proven to be, the property of John Kershuk, the husband, who was at work in a mine, and not present at the taking. He was not robbed by being put in fear either by use of a dangerous weapon or otherwise. ''It must appear that the taking was from the person or in the presence of the prosecutor.'' 2 Wharton's Criminal Law, (11th Ed.), sec. 1082; Bishop's New Criminal Procedure, Vol. 3, sec. 1006. Primarily, the taking must be from the person of the party robbed, and the indictment must so allege. *Rex* v. *Philpoe,* 2 Leach 673; *People* v. *Beck,* 21 Cal. 385; *Stegar* v. *State,* 39 Ga. 583; *Seymour* v. *State,* 15 Ind. 288; *State* v. *Leighton,* 56 Iowa 595; and *Kit* v. *State,* 11 Hump. (Tenn.) 167. In *James* v. *State,* 53 Ala. 380, the goods taken had been intrusted to the possession of the thief for the purpose of carrying them in company with the owner; by violence against the person of the owner, he carried off the goods, and was held to be guilty of robbery, for his possession of the goods up to the time of the violence was constructively the possession of the owner, and the taking in his presence was constructively from his person.

The indictment in the instant case charges defendant and his co-indictees with an assault upon Lena Kershuk with a dangerous weapon, and by putting her in fear and from her person and against her will did steal, take and carry away

$50.00, the property of John Kershuk. The evidence is that the money belonged to John who had left it that morning with his wife, Lena, for safekeeping, and that he was at work in a coal mine when it was allegedly taken by defendant. It is everywhere held, and reason approves, that robbery is committed where the taking is from the person, or in the presence of one who has a special interest in the property such as a bailee, trustee, common carrier or pawnee. The true owner may not be actually present and may know nothing of the crime. Thus in *Rex* v. *Deakin,* (168 Eng. Repts.) (Crown Cases Book 1) 530, goods were being transported to a consignee in a stage coach, and the property was charged in the indictment as being that of Markham, the stage coach driver, and it was held that while as against his employers (the masters of the coach) he had only the bare charge of the property and not legal possession, yet as against all the rest of the world he had a special property therein, and in fact had possession and control of them. In the instant case the indictment charges that the money was taken from the person of Lena Kershuk, and it necessarily follows that she had possession. Her possession is presumed to be lawful, and hence she had right to that possession and control of the property against all the rest of the world, excepting her husband. We are of the opinion that there is sufficient allegation in the indictment charging a special interest and possession of the person robbed. It would be better practice for the indictment to specifically aver the special interest and possession. Thus, in *Breckenridge* v. *Com.,* 97 Ky. 267, the indictment charges that the property taken was in possession of McNeale as the agent of the American Express Company, and others to the grand jurors unknown, and taken from him by fear of immediate injury to his person. See 3 Greenleaf on Evidence, (14th Ed.), secs. 223,. 228. That indictment was held to be good, and the conviction thereunder affirmed. It is not necessary that the taking shall be from the person of the actual owner. *People* v. *Anderson,* 80 Cal. 205, 22 Pac. 139; *People* v. *Vice,* 21 Cal. 344; *State* v. *Ah Loi,* 5 Nev. 99; *Brooks* v. *People,* 49 N. Y. 436; 10 Am. Repts. 398; *People* v. *Madas,* 201 N. Y. 349, 94 N. E. 857; *Com.* v. *Clif-*

*ford,* 8 Cush. (Mass.) 215; *Durant* v. *People,* 47 Mich. 332; *State* v. *Adams,* 58 Kan. 365; *People* v. *Shuler,* 28 Cal. 490; 9 Tex. Ct. App. 128. See 23 R. C. L. p. 1164, sec. 20. There are other decisions to the effect that the person robbed must either own the property or have such title to it which would enable him to recover the possession, if unlawfully deprived of it. On this line of cases defendant relies, and chiefly upon *State* v. *Lawler,* 130 Mo. 366, 32 S. W. 979. In that case, the owner of a saloon and restaurant had retired to sleep in his apartment over the saloon. His wife and her niece were in charge of the restaurant and saloon when two men entered and by force took and carried away the cash drawer and contents. The indictment charged the property to be in the husband, and the taking in the presence of and against the will of the wife. The court held that an indictment for robbery must charge the ownership in the person alleged to have been robbed; that the indictment which alleged ownership in the husband and the taking in the presence of and against the will of the wife was insufficient. The opinion cites other cases which seemingly uphold it. That indictment is not like the one before us, for the latter charges that the money was taken from the person of Lena Kershuk. It charges possession in her, and as above stated, that possession is presumed to be lawful, and would entitle her to recover it from any one who unlawfully took it from her. In *Brooks* v. *People, supra,* (49 N. Y. 436) the goods were taken from the dwelling of the owner who was absent, by putting in fear his daughter who was present in the house at the taking. One count charged the property to be in the father, the other count, in the daughter. The court held that the statute under which the indictment was found did not change the common law, and that at common law it was not necessary, to constitute robbery, that the property taken should belong to the person robbed; that the person robbed should be regarded as the owner, as against the robber. Therefore, it was of little consequence in whom the ownership was charged, if it was alleged and proven that the goods were taken from the person robbed or in his presence, by violence or putting him in fear of immediate injury to his person. In *State* v. *Adams,*

(Kan.) *supra,* the indictment charged an assault on Aiken, and the taking from him by putting him in fear, and that the property belonged to one Fred Harvey, and the court upheld the conviction on the ground that the person in lawful possession stands as the owner against the robber. In accord: *Stegar* v. *State,* 39 Ga. 583. If the actual owner must be present at the taking, then where a robber enters the dwelling and takes the husband's money from the wife or in her presence by putting her in fear, the husband being absent, there is no robbery, but simply larceny. We do not give such interpretation to the common law. The crime is a most serious one and the punishment must be most severe, no maximum confinement being stated in the statute; and, therefore, it should be clearly and fully charged and proven beyond reasonable doubt. But where the indictment charges, as in this case, that property belonging to a person named was feloniously taken from the person of another by putting in fear, etc., it sufficiently charges a special ownership in the person robbed, and will sustain a conviction for robbery.

Another asignment of error is that it was error to refuse to tell the jury the several verdicts it could return under the evidence such as armed robbery, robbery, larceny, assault, and not guilty. Mrs. Kershuk's evidence was to the effect that after defendant had found and appropriated the money she attempted to prevent him from taking it away by procuring her shotgun, and he then drew and presented a revolver at her, putting her in fear, causing her to drop the shotgun, whereupon he carried away the money. He testified that he did not have a pistol that day, and had not one in his possession since he had returned as a soldier from the World War. His companions say that they did not see him have a revolver that day, and none was found on his person when arrested. Here was a sharp conflict in the evidence, as to the revolver, between the prosecuting witness and defendant without any corroborating evidence to sustain the state. The jury, while believing the defendant committed robbery, would have been justified in finding that it was not done by the use of a dangerous weapon beyond all reasonable doubt. If they could so find, it was error to tell them they

494

should find him guilty as charged, or not guilty. It follows that the jury should have been told, as requested, the verdicts which the evidence would warrant. It is usual and quite proper, where lesser crimes are included in the indictment, to tell the jury what verdicts they may return under their findings of fact.

The last alleged error is to the giving of state's instruction No. 4 telling the jury that they were the sole judges of the weight of the testimony of any witness, and in ascertaining such weight, they could take into consideration the credibility of the witness as disclosed from his evidence, his manner of testifying, etc. It is the same instruction given as instruction No. 4 in *State* v. *Staley,* 45 W. Va. 792, 797, and approved in *State* v. *Ringer,* 84 W. Va. 546, except it uses the phrase *"knowingly* testified falsely to any material fact," whereas, the instruction in the *Staley* case omitted any qualification to the word testified. This instruction is commented upon in *State* v. *Magdich,* 105 W. Va. 585, 587. The addition of the word "knowingly" clears the instruction of criticism. We do not see in what respect it is erroneous or prejudicial, and none is pointed out in defendant's brief.

The judgment is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*