STATE OF WEST VIRGINIA

*v.*

CHARLES OTIS ROLLINS

(No. 10811)

*and*

STATE OF WEST VIRGINIA

*v.*

HERMAN BOGGESS

(No. 10812)

Submitted September 19, 1956. Decided October 16, 1956.

*Jackson Savage,* for plaintiffs in error.

*John G. Fox,* Attorney General, *Angus E. Peyton,* Assistant Attorney General, for defendants in error.

LOVINS, JUDGE:

In these cases, writs of error and supersedeas were granted by this Court upon the separate petitions of Charles Otis Rollins and Herman Boggess, who were jointly indicted, tried and convicted of the crime of unarmed robbery in the Circuit Court of Putnam County, West Virginia. The defendant Rollins was sentenced to

confinement in the penitentiary for an indeterminate sentence of from ten years to life, with a recommendation that he serve fifteen years; and the defendant Boggess was sentenced to a term in the penitentiary of from ten years to life, with the recommendation that he serve a term of ten years.

The complaining witness, Harley Saylor and the defendants met in Point Pleasant, West Virginia, in the afternoon of either the 9th or 11th day of May, 1955. The defendants had just been released from the Mason County jail. There was no bus service at that time between Point Pleasant and Charleston where they resided. The proof shows that Saylor and the defendants engaged in drinking beer at various places in Point Pleasant and their association resulted in an agreement, as claimed by the defendants, that Saylor would transport the defendants to Charleston for $2.00 and the delivery of some brick tile to him. Rollins gave him the $2.00.

They left Point Pleasant about 7 or 7:30 P.M., stopped at a liquor store and purchased two fifths of wine. In the meanwhile a man named Matheny who resided at or near Leon, West Virginia joined them a short while before they left Point Pleasant, and the four men, in the truck driven by Saylor, proceeded to the home of Matheny. After leaving Point Pleasant, the defendants, Saylor and Matheny drank some of the wine during the trip to the residence of Matheny, as well as at Matheny's residence. The defendants and Saylor then traveled to Buffalo, West Virginia, the three being seated in the cab of the truck which Saylor was driving.

An argument ensued, apparently involving the question whether Saylor had taken the defendants as far as he wished or whether he would bring them on to Charleston. At any rate, a fight ensued just before which Saylor secreted the ignition keys to the motor vehicle. The defendants left Saylor in the vicinity of the motor vehicle, called a taxi, using a telephone at a beer establishment, after which they were transported to Charleston where

the mother of Rollins paid the taxi driver $3.00, leaving a balance of $2.00 unpaid. The defendants testified that they had only $.25 when they arrived in Charleston. Saylor testified that in the fight in and alongside the truck near Buffalo, he was beaten and robbed by the defendants.

Saylor's testimony relative to the amount of money he had in his possession at the time of the fight is conflicting and uncertain. In answer to one question, he testified he had $14.00 or $15.00 when he left Point Pleasant with the defendants. On cross-examination however, he testified that he had a ten dollar bill, four one dollar bills and some change when he arrived in Point Pleasant, that while in Point Pleasant he bought some groceries, gasoline and beer.

On the day following the alleged robbery, Saylor returned to the point where the affray had occurred and found alongside the road and near the point where he was assaulted a five dollar bill, a one dollar bill and one cent. Saylor was unable to testify as to how much money he had when he left Point Pleasant, how much he had at the time of the assault, or how much, if any amount of money was taken from him by these defendants. The defendants deny taking any money or thing of value from Saylor.

It is stated by counsel for the defendants who presented the cases to this Court, that he did not represent the defendants in the trial court nor did he prepare the petitions for writs of error. The petitions found in the record assign some eleven points of error, but counsel states he thinks there is little or no technical error in such assignments, but he now assigns the following errors: (1) The refusal of the trial court to set aside the verdict and grant a new trial for the reason that the verdict is contrary to the law and evidence, (2) the trial court erred in permitting cross-examination of defendant Rollins concerning a conviction in the State of California described as a felony, whereas, in fact it was a misde-

meanor, under the statutes of that State, (3) the giving of state's instruction number 3 over objection, (4) the imposition of sentences for armed robbery when the indictment and conviction were for unarmed robbery.

The gist of defendants' argument goes to one of the essential elements of the crime of robbery, the actual taking of money or property of value from Saylor. Counsel insists on this point that the evidence of the state is inadequate to sustain the verdict; and that the taking of money or property from the defendant was not established beyond a reasonable doubt, hence, the state having failed in that essential, the trial court should have directed a verdict of not guilty at the conclusion of the state's evidence or should have set aside the verdict and granted a new trial after the verdict was rendered.

It is contended by counsel that the giving of state's instruction number 3 was error, since under the evidence the same should have been confined to assault and battery or not guilty.

The state answers only those assignments of error raised by present counsel for the defendants and contends that there is no error shown by the record as to such assignments, (1) that where the evidence is conflicting, the jury is the sole judge of weight and credibility to be given the testimony of any witness, (2) that there is no serious question as to the right to cross-examine Rollins who testified in his own behalf relative to prior convictions so as to test his credibility, whether they be felonies or misdemeanors, (3) it is in the discretion of the court to fix terms of sentence within statutory limitations, (4) it is proper to instruct a jury on all crimes included in an indictment where there is evidence, though conflicting, to sustain the verdict.

The argument of defendants' counsel with reference to the taking of money or property from the possession of the prosecuting witness calls for inquiry into the essentials of the crime of robbery. It is to be noted that Saylor is the only witness who testified for the state as

to whether money or property was taken from him on the occasion the defendants assaulted him. In *State* v. *Hackle,* 110 W. Va. 485, 489, 158 S. E. 708, the Court states that: "Perhaps the best definition is that stated in 34 Cyc. 1796, as follows: 'Robbery, at common law, is the taking with intent to steal, property in the possession of another, from his person or in his presence, by violence or by putting him in fear'." Substantially, the same definition will be found in the case of *State* v. *McAllister,* 65 W. Va. 97, 63 S. E. 750, where the first point of the syllabus reads as follows: "Robbery, at common law, as defined by text writers, is the felonious and forcible taking from the person of another of goods or money to any value, by violence or putting in fear." A definition to the same effect is stated in the cases of *State* v. *McCoy,* 63 W. Va. 69, 59 S. E. 758; *Franklin et al.* v. *Brown,* 73 W. Va. 727, 728, 81 S. E. 405. In 2 Wharton's Criminal Law, 12th Edition, page 1375, section 1083, common law robbery is defined as: "* * * the felonious and forcible taking of property of another from his person, or in his presence, against his will, by violence or by putting him in fear." In *State* v. *Hackle, supra,* at page 490, the Court makes the following observation: "The statement in *State* v. *Williams, supra,* [98 W. Va. 458, 467, 127 S. E. 320] is, therefore, not technically correct. The taking need not be from the *owner*".

The statute on the subject of robbery did not define the crime of robbery. *State* v. *Worthington,* 109 W. Va. 449, 452, 155 S. E. 313, but the common law definition was implied. *State* v. *Worthington, supra,* which was decided October 7, 1930. The various statutes will be hereinafter adverted to.

An examination of the testimony of Saylor, the prosecuting witness, with respect to being uncertain as to the amount of money he had in his pocketbook, together with the amount of money found at the scene of the fight by him the next morning, cast serious doubt on the question whether money or anything of value was taken from the person of Saylor or in his presence. It was too uncertain

to base a verdict of guilt of the grave crime of robbery which must be proved beyond all reasonable doubt.

The common law has not been greatly changed by statute in this jurisdiction. In Section 12, Chapter 191, Virginia Code of 1860, penalties are fixed for armed and unarmed robbery committed by a free person. In Chapter 144, West Virginia Code of 1868, minimum penalties are fixed for armed and unarmed robbery. By section 12, Chapter 118, Acts of the Legislature, 1882, Adjourned Session, the minimum penalties for armed and unarmed robbery were increased. In Barnes' West Virginia Code, 1923, Chapter 144, section 12, the Acts of 1882 were carried into that Code without change. Code, 61-2-12 provides that if a person should commit robbery by violence or certain other means named in the statute, a perpetrator should, upon conviction, be confined not less than ten years and if he committed robbery by any other mode or by other means, he should be confined in the penitentiary for not less than five years. The revisors note appended to Code, 61-2-12 states that section 12, Chapter 144, Code of 1923, was amended to define robbery.

The present statute, Chapter 28, Acts of the Legislature, 1939, Regular Session, reads as follows:

"If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit, or attempt to commit, a robbery in any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than five years.

"If any person (a) by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of

another any property or money or any other thing of value belonging to, or in the care, custody, control, management or possession of, any bank, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten nor more than twenty years; and if any person (b), in committing, or in attempting to commit, any offense defined in the preceding clause (a) of this paragraph, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten nor more than twenty-five years.

"All acts and parts of acts inconsistent herewith are hereby repealed."

Chapter 28, idem, defines some of the elements of the crime of robbery, but does not make any change in the common law relative to the question here considered.

The defendants and Saylor seem to have engaged in considerable drinking during the afternoon and part of the night of the alleged offense. It is possible that their recollection is somewhat blurred by the intoxicants they consumed before the fight. The defendant Rollins admits to assaulting Saylor but he explains he committed the assault because Saylor did not carry out the agreement to take the defendants to Charleston.

Since there is doubt as to proof of an essential and basic element of the crime of robbery, i.e., that money or other thing of value was taken by the defendants, we think the verdict of the jury is not sustained by the evidence, so as to establish the guilt of the defendants beyond all reasonable doubt.

In view of the insufficiency of proof in this case, we think the trial court was in error in overruling defendants' motion to strike the evidence of the state and direct a verdict of not guilty for the defendants; and, it was likewise error, at the conclusion of all the evidence, to

overrule defendants' motion to set aside the verdict and grant a new trial.

This holding renders it unnecessary to fully discuss the other assignments of error, but it is not amiss to observe that in the absence of reversible error, this case would have of necessity been remanded because of the irregular sentence. This is not a case calling for an indeterminate sentence, but must carry a definite sentence within the statutory limits.

It is also appropriate to indicate that the trial court in allowing the prosecuting attorney to question Rollins as to former conviction should have been restricted only to his credibility as a witness. *State* v. *Friedman,* 124 W. Va. 4, 18 S. E. 2d 653; *State* v. *McMillion,* 127 W. Va. 197, 32 S. E. 2d 625. The charge on which Rollins was being tried did not call for a showing of a general course of conduct and the statement made by the trial court with reference thereto was prejudicial to the defendant Rollins.

We perceive no error in the action of the court in admitting the testimony relative to the conviction of Rollins in the State of California.

What has been stated with reference to proof of an essential element of the crime of robbery, disposes of the assignment of error relative to state's instruction number 3. We do not deem it necessary however to discuss in detail any of the assignments of error made by the defendants' counsel other than the sufficiency of the proof offered by the state.

For the reasons stated, the judgment of the Circuit Court of Putnam County is reversed, the verdict of the jury is set aside and the defendants are granted new trials.

*Judgment reversed;*
*verdict set aside;*
*defendants awarded new trials.*