## Overbee v. Commonwealth.

(Decided November 23, 1928.)

### Appeal from Breathitt Circuit Court.

1. Criminal Law.—Conviction for manslaughter held flagrantly against the evidence, and defendant's motion for new trial should have been sustained.
2. Criminal Law.—In a criminal case, a peremptory instruction to find for accused is not allowable, where there is any evidence, however slight, conducing to show that defendant is guilty of offense charged.

G. C. ALLEN, T. T. COPE, E. C. HYDEN, and K. C. WILLIAMS for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Decorsey Overbee and others were charged by indictment with the murder of Bob Haddix, and, on his separate trial, Overbee was found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for ten years. As Overbee's main contention is that there was not sufficient evidence to sustain this verdict, it becomes necessary that we state briefly the facts that were established. On Saturday night, July 9, 1927, Overbee, Bob Haddix, and three others employed a taxi driver to take them from Jackson to a place called Frozen in Breathitt county. At Frozen they got some whisky; that being the purpose for which they made the trip. On their

way back, they drank this whisky. They arrived at Jackson some time near midnight, and got out of the car at or near the depot in Jackson. Haddix and Overbee started toward the depot. The remainder of the party went to a restaurant somewhere in the neighborhood, and, according to Overbee, he and Haddix went to Elkatawa, and, on their way to that place, stopped, and endeavored to get some more whisky, but were unable to do so. A short distance from Elkatawa, they sat down on the end of the ties on the railroad, and talked a few minutes. It seems that this point was in front of a house which all the witnesses refer to as "Aunt Nerve Begley's." Overbee tried to induce Haddix to go home with him and spend the night, but he refused, and said he would go over to Aunt Nerve's and go to bed. Overbee said that with that he went home and left Haddix sitting on the end of a tie.

The next morning about 4:30 Haddix was found near this place. At this point where these men separated, the railroad is constructed on a fill, and a path leads from the railroad down this fill toward this house referred to as Aunt Nerve Begley's. Haddix was found in this path about 8 or 9 feet from the railroad. The right side of his body was paralyzed, he had a wound on the left side of his head, involving his left ear and about one and one-half inches of the left side of his head above the ear, where apparently he had been hit or smacked with some flat instrument. The left side of his head was bruised, and blood was oozing out of his ears, and on the back of his head, just above the bulge, as the witnesses say, there was a cut about three inches long, and to the bone. His clothing was not torn or soiled particularly, nor was it in disorder, except his shirt tail had been pulled up a little. There was no blood on his clothing, and but very little blood was found around where he was. There was a small clot about the size of the palm of a man's hand found near where the man had been, and there were some drops of blood on the ballast between the ties. The cut on the back of his head appeared to have been made with a sharp instrument. There was no bruise about it. It was a perfectly straight, smooth cut. It had gone to the bone, and had flaked up the bone a little. Haddix was carried to a hospital, where he remained until the following Saturday, when he died. It is questionable whether or not Haddix ever regained such consciousness

as to make his dying statement admissible, a question which it is not necessary for us to decide, and which we do not decide, but, if admissible, it was favorable to Overbee. His wife, who testified about this dying statement, said she asked her husband if Overbee had hit him, and he shook his head "No." She then said to him, "Decorsey never hit you?" and again he shook his head "No."

Hiram Mullins testified that some time after midnight he heard some people talking on the railroad; that they were talking loud; one of them appeared to be a woman; that he concluded it was a drinking party, and went back in the house. He did not know who these people were.

Isaac Johnson testified that on Sunday morning, the 10th, he was on his way to church, and that, for lack of a button, his shirt collar was open; that he stopped at the home of Overbee's father, and asked for a collar button; that defendant got one for him, and complained of feeling bad. The witness asked Overbee why he felt bad, and he answered, "Me and Bob Haddix went to Frozen last night and didn't get home until after daylight. I have been ever since about one o'clock coming from town." The witness then remarked to Overbee that he was going to get into trouble, and Overbee said, "Old man, I guess I am into it and will never get out." When he was asked what he had done, he said, "I don't know what all." The wife of Isaac Johnson testified to practically the same thing. Overbee and his mother say no such conversation occurred.

Berthel Banks testified that on Monday morning, July 11, she had started to Elkatawa, and passed the house of Cicero Finley, and in about six or seven feet of that house; that Robert Simpkins, Fred Finley, Decorsey Overbee, Esther Finley, Sue Finley, and Cicero Finley were in the house; that she did not see Overbee, but she recognized his voice, and heard them talking about Bob Haddix, and she declined to repeat the language that was being used, but, when required to tell, she said: "Said he didn't do what he promised to and so they mopped up on him." She said that was all she heard. She said she could not see in the house, but she could recognize these voices. The defendant proved conclusively that he was not then in Elkatawa, but on Sunday, the

day before, he had gone to Kragon, where he worked for several days.

Laura Johnson testified she was with Berthel Banks at the time Berthel Banks passed the house of Cicero Finley; that she and Berthel were going to Elkatawa to do a day's washing for Si Banks, and that it was early in the morning when they went over; that they never stopped as they passed the house, and this witness said she heard no voice of any one talking in the house. It would also appear that this was the only occasion when Berthel Banks passed the Finley home that morning, because this witness had spent the night with Berthel Banks the night before. Overbee, Finley, and the others who were alleged to have taken part in that conversation denied it occurred or that Overbee was there. The defendant called several witnesses who testified they were acquainted with the reputation for truth and veracity of Isaac Johnson and Berthel Banks in the community in which they live, and that it was bad. No effort was made to sustain the reputation of those witnesses. This was all the evidence that in any wise connected Overbee with this killing. In a criminal case, a peremptory instruction to find for the accused is not allowable where there is any evidence, however slight, conducing to show that the defendant is guilty of the offense charged See Kennedy & Wigginton v. Com., 194 Ky. 502, 239 S. W. 796; Sorrels v. Com., 197 Ky. 761, 248 S. W. 205; Simmons v. Com., 207 Ky. 570, 269 S. W. 732. While there is some slight evidence that tends to connect Overbee with the death of Haddix, yet the most that can be said is that it creates little more than a suspicion.

This evidence does not show by what means Haddix was killed. The defendant tried to show he was killed by a passing train, but there is no evidence that he was so killed, nor is there any evidence to show just how he was killed. The evidence that he was killed by a train is mere suspicion, and about the same can be said concerning the evidence that Overbee killed him. The proof shows that all the members of this party were good friends. No motive whatever is shown, and a conviction based on what is proven in this case shocks our sense of justice, and we are bound to hold it is flagrantly against the evidence. Overbee's motion for a new trial should have been sustained.

The judgment is reversed.