## Simpkins v. Commonwealth.

(Decided May 7, 1929.)

LEEBERN ALLEN, G. B. STAMPER and CLAY WATKINS for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

About 4:30 a. m., on Sunday July 10, 1927, Robert Haddix was found insensible about 10 feet from the railroad track near Elkatawa. He had received a heavy blow on the side of his head, which cut part of the ear, and on the back of his head there was a cut about three inches long that went to the bone. The hair was cut and the sides of the wound were smooth, showing that the wound was made with a sharp instrument. He died a few days later, Decorsey Overbee, Fred Finley, and Robert Simpkins were indicted for murder. On the trial of Overbee he was found guilty of manslaughter by the jury, but on appeal to this court the judgment was reversed on the ground that the evidence was insufficient to sustain a conviction. Overbee v. Commonwealth, 226 Ky. 433, 11 S. W. (2d) 860. After this Robert Simpkins was

placed on trial. He was found guilty of manslaughter and his punishment fixed at two years' imprisonment. He appeals.

The facts, as shown by the proof on the trial of Overbee, are set out in the former opinion. The defendant earnestly insists that the proof against him does not warrant a conviction and that the judgment here should be reversed for this reason. But the proof here is materially different from the proof on the former trial. On Saturday evening, July 9, Overbee, Finley, Haddix, and Simpkins were in Jackson. They went in a taxi to Frozen and there got some whisky. They returned to Jackson about 10 o'clock. Soon after they returned Overbee and Haddix, after getting out of the car, went in the direction of the railroad station. Simpkins and Finley went into a restaurant. A train passed going in the direction of Elkatawa some hours later. Simpkins says that he got on this train and went home. Overbee, Haddix, and Finley also lived at Elkatawa, and near him. The train referred to passed some hours before Haddix was found insensible, about 4:30 a. m. July 10th.

Hiram Mullins lived about 190 feet from where the body of Haddix was found. During the night, not far from midnight, he heard some parties over there talking and making a racket, about 50 or 75 yards above where they found the man. The next morning he went over to this place. "It looked like drunken folks had been there; somebody had thrown up in between the railing and the railroad; a bottle was broken there and a lot of cigarette stumps, burnt matches, etc. When the racket occurred some of them talked pretty coarse, and one seemed to talk like a woman." The next day, Overbee in talking to a minister said that he would have to go down there and get a collar button. The minister asked him where he had been, and he said that he, Bob Hatton, and Simpkins had gone over to Frozen last night. The minister asked him what for, and he said after liquor. The minister said: "Boys, you fellows are going to get in trouble hanging out, get in trouble you will never get out." Overbee said, "Old man, I guess I am into it and I will never get out." The minister said, "What have you done?" He said, "I don't know what all I have done." Later, when Simpkins heard what Overbee had said to the minister, he went to see him about it, and, being told what Overbee had said, he said this: "The G—— d—— fool gave it all away on us; we are

gone." Nannie Haddix, the divorced wife of Robert Haddix, went to see him while he was in the hospital. He could not talk; but while he could not talk on account of the paralysis that had set in, he was conscious and could understand what any one said to him. She asked him if he realized that he had to die. He nodded his head. She then said, "Bob, did the train hit you?" He shook his head. "Did Fred Finley hit you?" He nodded his head yes. "Did Jan Simpkins hit you?" He nodded his head yes. Dr. Bach, who attended him while in the hospital, testifies that he tried to tell him several times how he was hurt, but that his tongue was in such a condition that he could not understand anything he said. The defendant is known locally as Jan Simpkins.

The proof on the trial fully warranted the jury in concluding that the deceased was not struck by a train, but that he was killed in a drunken brawl. The train would not have produced the character of injuries which this man received. No bones were broken, and his clothing did not indicate that he had been thrown from the track by a train. In view of the testimony of the divorced wife as to the dying declaration of the deceased and the statement of the defendant himself when told what Overbee had said, the court is unable to say that there was no evidence warranting the jury in finding the defendant guilty.

The dying declaration was competent, although not in words but by nodding the head, as Haddix could only express himself by shaking his head or nodding his head. Jones v. Commonwealth, 186 Ky. 283, 216 S. W. 607. The evidence of the doctor, as well as the evidence of Mrs. Haddix, shows that Haddix was in a dying condition and knew this.

The court excluded the evidence of Barthel Banks as to the conversation she heard. The court refused to allow the commonwealth to prove what Finley said about the cap and shoes on the next morning when Simpkins was not present. The proof that the cap and shoes were found at the place where a difficulty had occurred was properly admitted, just as the proof as to other things found there. The court asked this question, referring to the cap and shoes: "Did anybody claim anything, in Robert Simpkins' presence, that was found there by any one?" Answer: "Not that I know of." The commonwealth attorney then asked, "Who came after the cap

and shoes?" And the witness answered: "Why Fred Simpkins' wife and Jim Dan Finley's wife was with her." The answer seems to have been admitted only to explain why Mullins did not produce the cap and shoes on the trial. The defendant could not have been prejudiced by this, for he was in no wise connected with the cap and shoes. On the whole case, the court finds in the record no error prejudicial to the defendant's substantial rights.

Judgment affirmed.