UNITED STATES, Appellee

v

FELIPE VENTEGEAT, Second Lieutenant, U. S. Army, Appellant

20 USCMA 32, 42 CMR 224

No. 22,716

August 21, 1970

Captain Norman L. Blumenfeld argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel T. Ghent and Captain Monte Engler.

Captain Gordon F. Bailey, Jr., argued the cause for Appellee, United States. With him on the brief were Colonel David T. Bryant, Major Edwin P. Wasinger, Captain William R. Steinmetz, and Captain Benjamin G. Porter.

## Opinion of the Court

QUINN, Chief Judge:

Arraigned before a general court-martial convened at Fort Benning, Georgia, the accused pleaded guilty to seventeen specifications of larceny of money from various enlisted men, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He was sentenced to confinement at hard labor for three years, forfeiture of all pay and allowances, and dismissal, but the convening authority reduced the period of confinement to two years to conform the sentence to the terms of a pretrial agreement with the accused.

The first question presented by this appeal concerns the maximum confinement to which the accused was subject. The accused contends that the acts set out in the several specifications actually constitute a single larceny,

with the result that he was liable only to confinement for five years, not eight and one-half years as the law officer instructed the court members and as he believed at the time of the pretrial agreement. United States v Turner, 18 USCMA 55, 60, 39 CMR 55 (1968). The Government maintains that each specification alleged a separate theft carrying a penalty including confinement for six months, so that the total confinement for the seventeen offenses was eight and one-half years.

According to a stipulation of facts, the accused was designated a Class A Finance Agent for his company. On June 2, 1969, he obtained funds from the Finance Office to pay travel pay to members of the company on orders to Vietnam and Thailand. The persons named in the specifications were on the pay list. Those who were to receive pay were lined up outside the accused's office, and the accused "had each man report to him" separately. As each reported, he identified himself and signed his name on a Multiple Travel Payments List to acknowledge receipt of payment; the accused handed the payee a "stack of currency," which the accused had "counted out prior to disbursement." One column on the Payments List set out the amount due each individual, but the accused covered over this column "with a strip of paper," as each man "signed." The accused "wrongfully withheld" $20.00 from each man. Subsequently, in the course of "out-process" procedures, the discrepancy was discovered. An investigation was ordered, which resulted in the charges of which the accused stands convicted.

Two arguments are advanced in support of the contention that the incident gave rise to only one offense. First, the accused maintains that all the money he withheld was taken from the United States, not the individual payees, because he "had already set aside [the] currency which he would keep for himself" before the pay line was formed. The argument raises a number of questions as to the respective rights of the United States and the prospective payees in the payroll fund. We assume, without deciding, that when the money was received by the accused from the Finance Office, none of the payees had at that moment any possessory interest in it which could be the subject of a larceny from them. We may also assume, without deciding, that division of the money into separate parts, one for each payee, did not at that instant confer a right of possession upon the payee to the part intended for him. Neither of these assumptions, however, supports the accused's argument. Division of the money into "stacks" before formation of the pay line would not itself constitute larceny from the United States. The accused could not be certain that all the prospective payees on the list would appear and be paid. In fact, one name was crossed off the list.[1] Also, he could not be sure that some of the payees would not remove the slip covering the amount in the column or dispute the correctness of the amount of money given them. The scheme could not be effectuated as to any payee until he had signed the payroll to acknowledge receipt of the amount allocated to him. Not until he signed the list could a payee claim the amount provided for him; once he signed, he was entitled to the full amount and the accused was bound to pay that amount. Instead of turning over the full amount, however, the accused wrongfully withheld $20.00. At trial, the accused acknowledged to the law officer "that this $20.00 belonged to" each payee, and that each payee "was the owner of the property" taken by him. In our opinion, this was a correct assessment of his conduct. There was no single appropriation of a specified amount of money from the United States, but a wrongful withholding of $20.00 from the sum each payee

---

[1] The stipulation does not mention this fact. The list, however, was received in evidence at the Article 32 investigation, and we can properly consider the pretrial proceedings to determine whether the facts negate the plea of guilty. United States v Lenton, 8 USCMA 690, 692, 25 CMR 194 (1958).

was entitled to receive. The theft, therefore, was from each payee as charged, not from the United States Government.

For his second argument the accused relies upon the settled rule that when property belonging to different persons is taken at the same time and place and under one continuous impulse, there is but one larceny. United States v Swigert, 8 USCMA 468, 24 CMR 278 (1957); United States v Sanders, 13 USCMA 322, 32 CMR 322 (1962). We need not reexamine the logic of the rule, or attempt to reconcile it with the contrary rule in regard to offenses affecting the person, such as robbery. United States v Parker, 17 USCMA 545, 38 CMR 343 (1968). Whether a particular course of conduct results in a single offense or in separate offenses depends upon the facts. "[O]nly a short space of time and distance" in the taking of several articles belonging to different persons may result in "distinct and independent" larcenies. 52A CJS, Larceny, § 54, page 481. While the facts should be construed in the manner most favorable to the accused (United States v Taylor, 6 USCMA 289, 295, 20 CMR 5 (1955)), we cannot require micrometer measurements when the choice between separateness and unity is "in fact fair, tenable," and reasonable. United States v Hall, 6 USCMA 562, 565, 20 CMR 278 (1955).

Indisputably, the evidence demonstrates a single scheme to defraud; but, it is equally clear that success of the scheme depended upon many factors personal to the individual payee. The independent nature of these factors distinguishes the case from United States v Costello, 6 CMR 192 (ABR 1952), petition denied, 2 USCMA 680, 6 CMR 130 (1952), which is strongly relied upon by the accused. In Costello, Corporal Webb was entrusted by six soldiers with varying sums of money for deposit to their respective accounts. Webb gave all the money to the accused to accomplish the deposits. However, the accused misappropriated the money. He was convicted of six separate acts of wrongful appropriation but, on review, a board of review concluded that

he committed a single act of wrongful appropriation by taking all the money at the same time. Here, there was, as we noted earlier, no appropriation until each payee appeared at the accused's office, signed the pay list, and received $20.00 less than the amount he was entitled to. Each payee had to believe that the amount he received from the accused was the actual amount to which he was entitled. Evidence at the Article 32 investigation indicates that several of them attempted to challenge the amount paid, but were dissuaded by the accused. Thus, looking at all that occurred, it could fairly be concluded that, while the method of operation was the same, the payment to each payee was so dependent upon factors peculiar to him that each act of withholding was not merely a step in a single transaction but a distinct act of misconduct. American Jurisprudence points out that where larceny "is perpetrated by means of fraud and deceit practiced upon each owner separately, . . . the larceny from each owner is a distinct crime." 50 Am Jur 2d, Larceny, § 3, page 155. The observation is applicable to accused's conduct. We conclude, therefore, that the trial evaluation of the facts was fair and reasonable, and hold that the acts charged were separately punishable.

In another assignment of error, the accused challenges the use of written instructions as to the required voting procedure. As in United States v Pryor, 19 USCMA 279, 280, 41 CMR 279 (1970), the court members were provided with written instructions without "a word of advice or caution from the law officer." In Pryor, we held that this erroneous procedure required reversal of the sentence. Accordingly, the decision of the United States Army Court of Military Review as to the sentence is reversed.

The record of trial is returned to the Judge Advocate General of the Army. A rehearing on the sentence may be ordered.

Judges Ferguson and Darden concur.