329 S.E.2d 839

**STATE of West Virginia**

v.

**Leon F. COLLINS.**

**No. 15767.**

Supreme Court of Appeals of
West Virginia.

Dec. 21, 1984.

Concurring and Dissenting Opinion
Jan. 21, 1985.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

James B. McIntyre, McIntyre, Haviland & Jordan, Charleston, for appellant.

MILLER, Justice.

Leon Collins, the defendant, was convicted of two counts of attempted aggravated robbery, involving two clerks at a store, and one count of malicious wounding, inflicted on one of the clerks. We conclude that two of the defendant's assignments of error—that an improper alibi instruction was given over his objection and that double jeopardy principles foreclose his being convicted of two attempted aggravated robberies—warrant a reversal of his conviction. Other assignments of error which we find to be without merit are: (1) the

admission of testimony as to the defendant's flight; (2) the court's refusal to give the defendant's instruction on witness identification; (3) the failure to grant a mistrial when the court learned of a juror's kinship to a defense witness; and (4) the seventy-year sentence which the defendant argues violates the cruel and unusual punishment prohibition of Article III, Section 5 of the West Virginia Constitution.

The operative facts can be simply stated. On the evening of January 2, 1981, two men wearing ski masks pulled down over their faces and carrying handguns entered a Village Mart store in Charleston. Larry Watts, one of the store clerks, testified that prior to their entry into the store, he had seen and recognized the two armed men as Leon Collins and David Britton, both of whom Mr. Watts had known prior to this incident. As they entered the store, the defendant stated: "Get on the floor. This is a hold-up."

The defendant pointed his gun at Mr. Watts, who proceeded to get on the floor. Glenna Meadows, the other clerk, who had been in the back stockroom, came out into the store area, where she was subsequently shot and injured by Mr. Britton. Immediately thereafter, the defendant and Mr. Britton fled the store without taking any money.

## I.

At trial, the defendant's principal defense was that of alibi. In his testimony, the defendant denied any involvement in the crime and explained that on the evening of the attempted robbery, he visited friends and went to a couple of clubs. Several witnesses corroborated the defendant's testimony. The court, over defense objection, amended Defendant's Instruction No. 14 and, in effect, placed on the defendant the burden of proving his alibi.[1]

---

1. The text of this amended instruction is:
   "The Court instructs the jury that where a person is charged with and on trial for an offense offers in his defense evidence for the purpose of proving that he was not present at the place where, and at the time when, the

offense was committed, such defense is, in law, called an alibi.
   "The Court instructs the jury that where the accused relies upon an alibi in his defense, the burden rests upon him; yet this in nowise relieves the State, if it seeks a conviction in

We had approved a similar instruction in *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978). However, the Fourth Circuit Court of Appeals in a case arising from this State, *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), determined that the alibi instruction approved in *Alexander* was unconstitutional because it shifts the burden of proof of a material element of the State's case to the defendant.[2] In *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983), we decided to defer to the federal court and overruled *Alexander*, stating in Syllabus Point 1:

"Because of the holding in *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, [459 U.S. 853], 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), *State v. Alexander*, [161 W.Va. 776], 245 S.E.2d 633 (1978), is overruled to the extent that it permits the giving of an instruction that places the burden upon the defendant to prove his alibi defense sufficiently to create a reasonable doubt in the mind of the jury as to his guilt."[3]

■ Based on *Adkins* and *Kopa*, we conclude that the amended alibi instruction was constitutionally defective and reverse the judgment of the circuit court.

## II.

A more novel question is presented on the double jeopardy issue. The defendant argues that under the facts in this case, only one count of attempted aggravated robbery could be charged because the property sought to be taken belonged to only one owner, the Village Mart.

In *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902, 907 (1982), we stated that the "primary purpose [of W.Va.Code, 61–2–12, our robbery statute,] was to set the degrees of robbery" and quoted from Syllabus Point 3 of *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981): "W.Va.Code, 61–2–12, enacted in 1931, divides robbery into two separate classes calling for different penalties: (1) robbery by violence or by the use of a dangerous weapon, and (2) all other robberies."[4] We also stated in *Neider*, 170 W.Va. at 667, 295 S.E.2d at 907, that: "We have in the past recognized that our robbery statute must be read in conjunction with the common law elements of larceny. *E.g., State ex rel. Vandal v. Adams*, 145 W.Va. 566, 115 S.E.2d 489 (1960); *Franklin v. Brown*, 73 W.Va. 727, 81 S.E. 405 (1914)."

In *Neider*, we quoted the common law definition of larceny as set out in Syllabus Point 1 of *Harless*: "At common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." We then restated the common law definition of larceny, which is contained in Syllabus Point 3 of *State v. Louk*, 169

---

this case, from the necessity of making out its cause against the defendant to the exclusion of all reasonable doubt; and while the accused carries the burden of proving his alibi, his evidence in support thereof requires an acquittal, if it creates a reasonable doubt in the minds of the jury, of his presence at the time and place of the commission of the offense."

2. The court in *Adkins*, 674 F.2d at 282, reasoned: "An alibi ... negates *every* fact necessary to prove a breaking and entering; the defendant could not commit the offense if he was elsewhere at the time." (Emphasis in original).

3. We also said in Syllabus Point 2 of *Kopa:* "The invalidation of the instruction approved in *State v. Alexander*, [161 W.Va. 776], 245 S.E.2d 633 (1978), that places the burden upon the defendant to prove his alibi defense sufficiently to create a reasonable doubt in the mind of the jury as to his guilt is only applicable to those cases currently in litigation or on appeal where the error has been properly preserved at trial."

4. The relevant part of W.Va.Code, 61–2–12, is:

"If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit, or attempt to commit, a robbery in any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than five nor more than eighteen years."

W.Va. 24, 285 S.E.2d 432 (1981),[5] and made this comparison between the crimes of larceny and robbery: "It is clear that robbery at common law encompassed the same elements as a larceny and included two additional elements: the taking has to be from the person of another or in his presence and such taking has to be by force or putting the person in fear." 170 W.Va. at 667, 295 S.E.2d at 907. (Footnote omitted).

■ It cannot be doubted that one of the principal aspects of the common law crime of robbery is the taking of personal property of another against his will with the intent to permanently deprive him of the ownership thereof. We have reversed robbery convictions where the State failed to prove that there was an unlawful taking of personal property with the intent to permanently deprive the owner of it. *See, e.g., State v. Ferguson,* 168 W.Va. 684, 285 S.E.2d 448 (1981); *State v. Rollins,* 142 W.Va. 118, 94 S.E.2d 527 (1956); *State v. Morris,* 96 W.Va. 291, 122 S.E. 914 (1924); *State v. McCoy,* 63 W.Va. 69, 59 S.E. 758 (1907).

From a historical standpoint, it has been commonly accepted that robbery at common law was an aggravated form of larceny. 2 J. Bishop, New Commentaries on the Criminal Law § 1158 (8th ed. 1892); 2 W. Burdick, The Law of Crime § 588 (1946); W. Clark, Handbook on Criminal Law §§ 105–07 (3d ed. 1915); J. Davis, A Treatise on Criminal Law 199 (1838); W. La-Fave and A. Scott, Handbook on Criminal Law § 94 (1972); R. Perkins, Criminal Law 279–81 (2d ed. 1969); L. Weinreb, Criminal Law 271 (1969); 2 F. Wharton, Wharton's Criminal Law and Procedure § 547 (R. Anderson ed. 1957).[6] Furthermore, with regard to larceny, we have held that the taking of two separate items of property from the same owner at the same time is but one larceny. *State v. Mullenax,* 124 W.Va. 243, 252, 20 S.E.2d 901, 905 (1942), *overruled on other grounds, State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977). This appears to be the general rule. 50 Am.Jur.2d *Larceny* § 3 (1970); 52A C.J.S. *Larceny* § 53 (1968).

■ We believe that the legislature has not by the enactment of W.Va.Code, 61–2–12, redefined the elements of robbery from those established by the common law. In *Smith v. West Virginia State Board of Education,* 170 W.Va. 593, 295 S.E.2d 680 (1982), we said in Syllabus Point 2: "One of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law."

In analyzing double jeopardy, we stated in Syllabus Point 1 of *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977), that:

"The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." [7]

In the foregoing syllabus point, we utilized language from *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969), but went on to say in the text of *Conner,* 160 W.Va. at 683, 238 S.E.2d at 530: "It is our view that Article III, Section 5 of the *West Virginia Constitution is, at least, coextensive with* the three principles set out in *North Carolina v. Pearce, supra,* and prohibits multiple punishments for the same offense." (Emphasis added).

---

5. Syllabus Point 3 of *Louk* states: "To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof."

6. This statement is also confirmed by case law. *E.g., People v. Butler,* 65 Cal.2d 569, 421 P.2d 703, 55 Cal.Rptr. 511 (1967); *People v. Gallegos,* 130 Colo. 232, 274 P.2d 608, 46 A.L.R.2d 1224

(1954) (En Banc); *State v. Gardner,* 356 Mo. 1015, 204 S.W.2d 716 (1947); *State v. D'Agostino,* 176 N.J.Super. 49, 422 A.2d 97 (1980); *State v. Puga,* 85 N.M. 204, 510 P.2d 1075 (1973); *State v. Smith,* 268 N.C. 167, 150 S.E.2d 194 (1966); *Watson v. State,* 207 Tenn. 581, 341 S.W.2d 728 (1960).

7. Article III, Section 5 of the West Virginia Constitution provides in material part that "[n]o person shall … be twice put in jeopardy of life or liberty for the same offence."

From the foregoing summary of the three areas that the Double Jeopardy Clause is designed to protect, it is clear that this case involves the question of multiple punishments for the same offense. We are aware of recent United States Supreme Court cases which indicate that where multiple punishments are involved for the same offense, the primary test for resolving the double jeopardy question is to ascertain the legislative intent. We addressed this issue in *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131, 142 (1983):

> "It does appear from *Albernaz v. United States,* [450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)], that the United States Supreme Court in viewing penal statutes to determine if they impose multiple punishments for the same offense utilizes the *Blockburger* [*v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)] test as a rule of statutory construction: 'The *Blockburger* test is a "rule of statutory construction," and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.' 450 U.S. at 340, 101 S.Ct. at 1143, 67 L.Ed.2d at 282. *See also Missouri v. Hunter,* [459 U.S. 359], 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Once the determination is made that statutory offenses are separate under the *Blockburger* test by virtue of the fact that each provision requires proof of an additional fact which the other does not,

then multiple punishments are appropriate."[8]

We were confronted in *Zaccagnini* with the question of whether or not possession with intent to deliver a narcotic substance was a separate and distinct offense, under double jeopardy principles, from possession with intent to deliver a controlled substance that was not a narcotic. After analyzing the separate statutory provisions, we concluded that since the elements of the two offenses differed, it was permissible to punish the defendant for both offenses.

The United States Supreme Court's utilization of *Blockburger*'s legislative intent analysis may well be appropriate in a case where two separate criminal statutes are involved, as in *Missouri v. Hunter, supra, Albernaz v. United States, supra,* and *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). However, we do not believe that *Blockburger* is applicable to the present case for several reasons. First, our robbery statute is not a comprehensive statute setting out the elements of the crime. Second, it is clear from our cases that we have imported the common law elements of robbery into W.Va.Code, 61–2–12, to flesh out its contours. Third, it is doubtful that the *Blockburger* test can be appropriately utilized to ascertain legislative intent where a single statute is in issue and the question is whether or not under that statute multiple punishments can be meted out for one criminal act.[9]

---

**8.** In *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 543–44 (1983), the United States Supreme Court said:

> "Our analysis and reasoning in *Whalen* [*v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)] and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear."

**9.** We have utilized *Blockburger* to determine whether or not a given criminal offense is a lesser included offense of another offense. In these cases, a double jeopardy question was not at issue. Instead, the controversy was whether or not an instruction for the lesser included offense should have been given. *See, e.g., State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982) (larceny lesser included offense of robbery); *State v. Ocheltree,* 170 W.Va. 68, 289 S.E.2d 742 (1982) (criminal trespass not a lesser included offense of burglary); *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981) (larceny not a lesser included offense of burglary). In *Louk,* we recognized in note 3 that the determination of whether or not an offense is a lesser included offense carries double jeopardy implications. For example, the United States Supreme Court, utilizing the *Blockburger* test, has held that a conviction of a lesser included offense will bar prosecution of the greater offense, *e.g., Brown v.*

We have examined cases from other jurisdictions involving the robbery of stores or banks where more than one clerk or employee was present. It is sometimes argued that since each clerk or employee, through his employment, exercises constructive possession over his employer's property, a separate robbery conviction can be established for each employee present in the store or bank during a robbery. However, this theory has been rejected by most of the courts addressing the issue. The rationale commonly advanced by these courts is that because the property taken is owned by only one entity, i.e., the store or bank, there is only one larceny and, therefore, only one robbery.

In *Allen v. State*, 428 N.E.2d 1237 (Ind. 1981), two armed men threatened employees of a credit union and took money from two tellers. The court held that approaching each teller may constitute several assaults, but that upon taking the property, only one robbery had occurred when all of that taken property is titled in one entity. This result was reached even though robbery in Indiana is classified as an offense against the person, as is our robbery statute. Ind.Code § 35–42–5–1 (1977). *See also Lane v. State*, 428 N.E.2d 28 (Ind. 1981); *Williams v. State*, 271 Ind. 656, 395 N.E.2d 239 (1979).

In *People v. Nicks*, 23 Ill.App.3d 435, 319 N.E.2d 531 (1974), the defendant was convicted of three counts of armed robbery of a market. He had taken money from the manager and two checkers at separate check-out counters. The court, holding there was only one robbery, reasoned that there was only one course of conduct and only one entity's property taken: "All three acts occurred almost simultaneously, and in each instance it was store money either from a safe or cash register which was taken." 23 Ill.App.3d at 442, 319 N.E.2d at 536.

Similarly, in *State v. Potter*, 285 N.C. 238, 204 S.E.2d 649 (1974), the defendant

entered a convenience store, drew a revolver and said, " '[f]reeze, I want all the money.' " 285 N.C. at 241, 204 S.E.2d at 652. There were two employees who each gave the defendant money out of two cash registers. The court in holding there could be only one conviction stated: "[W]hen the lives of all employees in a store are threatened and endangered by the use or threatened use of a firearm incident to the theft of their employer's money or property, a single robbery with firearms is committed." 285 N.C. at 253, 204 S.E.2d at 649. *See also State v. Ballard*, 280 N.C. 479, 186 S.E.2d 372 (1972).

Finally, in *State v. Faatea*, 65 Hawaii 156, 648 P.2d 197 (1982), the Supreme Court of Hawaii held that there was only one robbery when the defendant and a companion entered a Ramada Inn accounting office, pointed a gun and said " '[E]veryone down on the floor. [T]his is a hold-up,' " 65 Hawaii at 156, 648 P.2d at 197–98, and left with $25,000 of the hotel's money. Because there were five employees in the office, the robbers were charged in a five-count indictment. In dismissing the indictment, the court stated:

> "[I]nasmuch as there was but one act of theft here, from one owner, we are constrained to hold that the defendant could be convicted and sentenced for but one robbery offense. The theft was of Ramada Inn property, and each of the five employees named were simply custodians of the property for the benefit of their employer. The threatened use of force was directed against all five for the purpose of effectuating the unlawful taking of their employer's property. It was this threat which converted the taking from theft to robbery. Thus, there was only one aggravated theft (robbery) for which a sentence could be imposed." 65 Hawaii at 157, 648 P.2d at 198.

*See also State v. Perkins*, 45 Or.App. 91, 607 P.2d 1202 (1980).[10]

*Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and vice versa, *e.g.*, *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). The present case, of course, does not deal with a lesser included offense.

**10.** *Contra: People v. Ramos*, 30 Cal.3d 553, 639 P.2d 908, 180 Cal.Rptr. 266 (1982) (In Bank), *reversed on other grounds sub nom. California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983); *State v. Shoemake*, 228 Kan. 572,

Similar results have been reached in a number of cases decided under the federal Bank Robbery Act,[11] where money has been taken from several bank tellers. In *United States v. Canty*, 469 F.2d 114 (D.C. Cir.1972), the defendants were convicted of four counts of armed robbery, one count for each of the bank tellers robbed. The court, in setting aside these convictions, stated:

"[W]e cannot agree with the Government's position that the robbery of each teller constitutes a separate 'taking' within the meaning of the statute.... There is no doubt here that only one transaction took place and that only one bank was robbed.... Even assuming that the intent of the statute in this regard is not perfectly clear, the Supreme Court has held that, unless a statutory intent to permit multiple punishments is stated 'clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.'" 469 F.2d at 126–27. (Footnotes omitted).

The position taken in *Canty* has been reaffirmed in subsequent cases. *See, e.g., United States v. Diggs*, 522 F.2d 1310 (D.C. Cir.1974), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *United States v. Cooper*, 504 F.2d 260 (D.C.Cir. 1974); *United States v. Marzano*, 537 F.2d 257, 33 A.L.R.Fed. 307 (7th Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977).

We need not for the purposes of this opinion address whether or not a completed robbery in a business establishment in the presence of multiple clerks or other custodians of the business's property constitutes a single robbery because we are dealing here with attempted robberies. The foregoing opinions provide a useful analogy, but it is in the area of attempted robbery that the double jeopardy issue becomes even more attenuated because of the lack of any factual predicate to warrant a conclusion that more than one attempted robbery occurred.

We discussed the crime of attempted robbery in *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), and concluded in Syllabus Point 2 that: "In order to constitute the crime of attempt, two requirements must be met: (1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime." We also stressed in *Starkey* "the necessity of showing a clear intent to commit the underlying crime, where one is charged with the attempt to commit it." 161 W.Va. at 522, 244 S.E.2d at 223, *citing State v. Gill*, 101 W.Va. 242, 244, 132 S.E. 490, 491 (1926).

We believe that the facts in the present case do not warrant the conclusion that two attempted robberies were contemplated. Furthermore, even though the legislature has in W.Va.Code, 61–2–12, made an attempt to commit robbery punishable to the same extent as the completed crime of robbery, we do not believe that this statute has altered the basic common law elements of robbery or our substantive law on attempted crimes. *See State v. Starkey, supra.*

In the final analysis, we believe that it is impossible to conclude from either the common law or W.Va.Code, 61–2–12, that an attempt to rob a store by presenting a firearm and leaving without taking any

618 P.2d 1201 (1980); *Commonwealth v. Levia*, 385 Mass. 345, 431 N.E.2d 928 (1982); *People v. Wakeford*, 418 Mich. 95, 341 N.W.2d 68 (1983); *State v. Johnson*, 499 S.W.2d 371 (Mo.1973). These courts failed to recognize that at common law, robbery was considered to be aggravated larceny. By allowing multiple robbery convictions when only one larceny was committed, these courts in effect altered the substantive definition of robbery as developed at common law without addressing their authority to do so. The dissent in *Wakeford* forcibly makes this point.

11. The federal Bank Robbery Act, 18 U.S.C. § 2113(a), provides, in part:

"Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank....

\*   \*   \*   \*   \*   \*

[s]hall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

property can, in light of double jeopardy principles, result in multiple convictions of attempted aggravated robbery for each clerk present in such store. If this were the rule, then separate convictions of attempted aggravated robbery could also be obtained for every other person who was present in the store. We decline to extend the law of attempt to justify such a result without a more precise and detailed statute than W.Va.Code, 61–2–12.

■ Therefore, we conclude that the trial court erred in allowing the defendant to be tried for two counts of attempted aggravated robbery. We recognize, as does the defendant, that his conviction for malicious wounding of the clerk is not barred by double jeopardy.[12]

### III.

■ The defendant's other grounds of error may be more rapidly disposed of in light of the fact that the case is being reversed. The defendant complains that the trial court refused to have an in camera hearing on the evidence of the defendant's flight, as required by *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981). This case was tried on June 3, 1981, and the *Payne* decision was not issued until June 30, 1981. Consequently the trial court cannot be faulted for not following *Payne*. The circuit court did have a preliminary in camera conference when the issue initially surfaced during the prosecutor's opening statement. Certainly, at any retrial, a *Payne* hearing, if requested, can be held.

■ Much the same point can be made of the defendant's claim that his identification instruction was improperly refused. It was not until *Payne* that we indicated that an identification instruction must be given in certain circumstances. *See also State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603, 614–15 (1984). The circuit court without the benefit of these cases did permit the

State and the defendant to have a limited identification instruction. The matter may be resolved on retrial in light of *Payne* and *Watson*. The issue as to the juror who knew and allegedly disliked a defense witness will obviously be cured with a new panel. It would not be error in any event since this was disclosed after the jury was impaneled and the juror indicated that he could be unbiased. No defense challenge was made at that time.

■ The final error asserted relates to the seventy-year sentence. If, after this case is remanded, a similar sentence is imposed, we require, as we have in other robbery cases, that a relevant statement be made by the court discussing the reasons for such a sentence. *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984); *Smoot v. McKenzie*, 166 W.Va. 790, 277 S.E.2d 624 (1981); *State v. Houston*, 166 W.Va. 202, 273 S.E.2d 375 (1980).

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

NEELY, Chief Justice, concurring in part and dissenting in part.

Although I concur with the majority that this case must be reversed because of the inappropriateness of the alibi instruction given to the jury, I dissent to the majority's second syllabus point.

In fashioning a double jeopardy policy, I believe that this Court cannot ignore the fact that multiple victims have been the subjects of the defendant's act. Certainly one function of a criminal justice system is to enable individuals made victim by the criminal acts of another to find some individual vindication for the harm done to each.

The primary concern of this State's robbery statute, *W.Va.Code* 61–2–12 [1961] is

---

**12.** Most courts have recognized that where several custodians of a business's property are robbed, prosecution is not barred for separate assaults on each of them. *See United States v. Fleming*, 504 F.2d 1045 (7th Cir.1974); *Dimenza v. Johnston*, 131 F.2d 47 (9th Cir.1942). More-

over, if other patrons of a business are also robbed, separate robbery convictions are permissible. *See, e.g., Richardson v. State*, 429 N.E.2d 229 (Ind.1981); *State v. Hutchison*, 228 Kan. 279, 615 P.2d 138 (1980); *Morgan v. State*, 220 Tenn. 247, 415 S.W.2d 879 (1967).

with the physical danger or threat of danger to the victim and not with the property aspect of the crime. Therefore, if multiple individuals are injured or placed in fear and apprehension of injury during the course of an attempted theft or actual theft, I believe it is proper to charge the defendant with a separate count of robbery for each individual victim.

In this case the petitioner alleges that the indictment charging him on three separate counts is in violation of both federal and state double jeopardy principles because two of the counts involved the single offense of robbery.

In *State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440 (1980), this court held: "A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan." *Id.* at Syl.Pt. 1. Our opinion in that case indicated we believed that a procedural rule making joinder of charges related to a single incident compulsory would free a defendant from the burden of having to defend against multiple prosecutions. If the defendant found such an indictment prejudicial, he retained the right to move for severance. There is nothing in the record to indicate that the severance option was not available in this case. Therefore, the prosecutor's belief that the defendant was guilty of multiple offenses was handled properly through the presentment of an indictment alleging all of the crimes committed.

In *Watson,* however, we pointed out that this procedural device did not answer the ultimate question of whether the multiple offenses charged were so similar as to constitute the "same offense." I understand petitioner's position in this case to be that as a matter of substantive law the indictment charges him with two offenses for what was essentially one robbery. In addressing that assignment of error, it is necessary to look at both the common law offense of robbery and the statutory purposes underlying its codification in *W.Va. Code* 61–2–12 [1961].

I note at the outset that the body of doctrine in the area of double jeopardy is in an acknowledged state of confusion. *See Burke v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1977). Obviously much of this difficulty is traceable to confusion not directly related to the meaning of the double jeopardy clause; but rather springs from uncertainty about legislative intent at the time the elements of certain crimes were established. The point is well illustrated by a hypothetical:

Suppose for example that a defendant enters a bank, discovers that four tellers are unexpectedly on duty, and robs them all. Whether the defendant's conduct should be defined as a single act of robbery or as four separate robberies depends on one's purpose in making robbery a crime. If the purpose is to make the punishment fit the evil nature of the defendant's mind as he entered the bank, the defendant's conduct will be defined as one robbery; if the purpose is to deter defendants from entering banks for the purpose of committing robbery, it will probably be defined as a single robbery; if the purpose is to give defendants who had already robbed one teller an incentive to desist from robbing others, it will be treated as four robberies; and if the purpose is to make the punishment fit the consequences of the defendant's actions, it will also be defined as four. In short, unless the Double Jeopardy Clause is capable of deciding that one and only one of the foregoing purposes of punishment is legitimate, it cannot decide which is the appropriate unit of prosecution.[1]

Therefore, it is a useful point of departure to examine the intent of the West Virginia legislature in adopting our current robbery statute. Unfortunately, the stat-

---

1. Westen and Drubel, "Toward A General Theory of Double Jeopardy," 1978 *The Supreme Court Review* 113, n. 154.

ute does not provide a statutory definition of the crime of robbery. *State ex rel. Vandal v. Adams,* 145 W.Va. 566, 115 S.E.2d 489 (1960). Instead, although the section prescribes the penalty, it does not delineate the offense. *Young v. Boles,* 343 F.2d 136 (4th Cir.1965). Nevertheless, the purposes of the statute are entirely clear. There was no need to set out a statutory definition because robbery has been defined consistently throughout this state's case law and the common law generally. Our crime of robbery is the common law crime. *West Virginia Code* 61–2–12 [1961] merely sets forth the punishment for aggravated and unaggravated robbery and attempted robbery. The question presented by this case is whether the common law crime of robbery that protected people from being endangered has in any way been modified by our statute.

First, it is useful to note that the section of the penal code on robbery is included in the chapter that defines crimes against the person rather than in the section that defines crimes against property. It is, therefore, at least reasonable to draw the inference that the primary motivation of the legislature in framing this statute was to protect individuals from bodily harm and emotional terror. If this is the primary focus of the statute, it necessarily follows that the number of crimes committed relates to the number of persons against whom violence or the fear of violence is perpetrated—not to the number of cash registers emptied or wallets pilfered.

It is also highly instructive to note that the robbery statute is unique in the West Virginia penal code in that it defines both attempt and actual commission of the crime as equivalent offenses. This statutory scheme has been noted and approved by this court in *State ex rel. Vascovich v. Skeen,* 138 W.Va. 417, 76 S.E.2d 283, *cert. denied,* 346 U.S. 916, 74 S.Ct. 277, 98 L.Ed.2d 411 (1953): "Under this section the attempt to commit robbery is a crime in itself, and such attempt does not come within the provisions of § 61–11–8, which

provides for lesser penalties in the case of an attempt to commit a criminal offense, where the attempt to commit and the commission of the crime are not inherent in the same statute."

In taking this approach to the crime of robbery, West Virginia is in accord with a number of other states as well as with the scholars who drafted the *Model Penal Code.* The Comments on the robbery statute in the *Model Penal Code* provide considerable insight into both the historical development of the crime of robbery and the rationale for treating attempt and the actual commission as the same offense:

> The perception that one who attempts a robbery poses essentially the same dangers as the successful robber led legislatures to develop more serious sanctions for various forms of attempt. The offense of assault with intent to rob was one response and redefining robbery to include an assault with intent to rob was another. Often some distinctions in penalties were preserved.

> There is, however, no penological justification for distinctions on this basis. The same dangers are posed by the actor who is interrupted or who is foiled by an empty pocket as by the actor who succeeds in effecting the theft. The same correctional dispositions are justified as well. *The primary concern is with the physical danger or threat of danger to the citizen rather than with the property aspect of the crime.* By including attempted robbery within the time span during which robbery can occur, [the model statute] therefore makes it immaterial whether property is obtained." [Emphasis added; footnotes omitted.]

At least twenty other states follow the Model Penal Code in clearly including attempted robbery within the coverage of the robbery offense.[2] Some of those states have explicitly stated their purpose in so defining the crime. For example, the com-

---

**2.** Those states include Alabama, Arizona, Arkansas, Connecticut, Delaware, Florida, Hawaii, Iowa, Kentucky, Maine, New Jersey, North Da- kota, Ohio, Michigan, Oregon, Pennsylvania, Tennessee and Texas.

mentary to the Arkansas criminal code states:

> [Section] 412103 redefines robbery in a way that shifts the focus of the offense from the taking of property to the threat of physical harm to the victim. One consequence of the definition is that the offense is complete when physical force is threatened; no transfer of property need take place.

By treating attempted robbery and robbery as identical offenses, the legislature has made plain that its primary concern in delineating the elements of this offense is not the taking of property. Rather, the legislature sought to punish individuals whose action posed real physical danger to innocent victims and exposed those victims to the mental torment of knowing that their lives were endangered because criminals wished to take property. In light of this legislative purpose, I think it is necessary to give each individual who has been exposed to such danger the right to personal vindication for the crime committed against his person.

Although this court has not yet spoken directly to the issue of double jeopardy in the context of a robbery affecting more than one victim, we have made plain that a concern with multiple victims is a primary focus of our analysis of double jeopardy questions. In *State ex rel. Watson v. Ferguson, supra,* a case involving multiple murders, we stated:

> In any analysis of the policies underlying double jeopardy in the area of offenses against multiple victims, it must be recognized that the extent [of] criminal culpability cannot be answered merely by looking at the shortness of the time frame. Some consideration must be given to the defendant's criminal acts and intent. We do not conceive that in fashioning a double jeopardy policy in regard to what is the "same offense" that we can ignore the fact that multiple victims have been the subject of the defendant's acts. There can be little doubt that one function of a criminal justice system is to enable those individuals who have been victimized by the criminal acts of another

to find some individual vindication of the harm done to each. Certainly, the degree of culpability, and as a consequence the degree of punishment, must bear some proportion not only to the magnitude of the crime but also to the number of victims involved. These are fundamental considerations that a society expects from a criminal justice system.

*Id.,* 166 W.Va. at 348, 274 S.E.2d at 446. The court also noted Justice Traynor's position on this matter stated in *Neal v. State,* 55 Cal.2d 11, 20, 9 Cal.Rptr. 607, 612, 357 P.2d 839, 844 (1960) *cert. denied,* 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961):

> A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than the defendant who harms only one person. For example a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than the defendant who chooses a means that harms only a single person.

The case *sub judice* shows both the justice and practicality of treating robbery as a crime against the person and of recognizing that each individual victim has suffered from an additional instance of the crime. The appellant argues that he committed only one attempted robbery. A question arises as to whether he believed the indictment charge listing Glenna Meadows as a victim or that pertaining to Larry Watts was unjust. Did he attempt to rob only Larry Watts because Ms. Meadows was in the back room at the time he entered the store? Was Ms. Meadows in less fear or apprehension of violence at the time the appellant's bullet struck her? Or, is the charge pertaining to Mr. Watts a miscarriage of justice against the appellant? Was Mr. Watts not placed in fear or apprehension of violence when he saw his fellow worker shot and recognized that his position near the cash placed him in imminent danger? Because the appellant fled before completion of his crime, we do not know whether he intended to rob the employees individually as well as robbing the store.

We do know that both were placed in danger because of their custodial responsibility for the money and that both felt themselves to be victims in a highly personal and justifiable way.

Although the common law treated attempt as a lesser crime than robbery, this can be explained by the fact that at common law robbery was a capital offense. Indeed, the presence of the death penalty also helps to explain the relative dearth of early case law relating to the double jeopardy issue in the robbery context. It is hard to imagine a more academic exercise than deciding whether to hang a man twice.

Nevertheless, it is clear that from the beginning robbery was treated as a separate crime because it placed persons, and not just their property, in jeopardy. In distinguishing robbery from other forms of larceny, Blackstone wrote:

> If the thief, having once taken a purse, returns it still it is a robbery; and so it is whether the taking be strictly from the person of another or in his presence only; as where a robber by menace and violence puts a man in fear, and drives away his sheep or his cattle before his face. But if the taking be not either directly from his person or in his presence, it is no robbery. It is immaterial of what value the thing taken is: a penny as well as a pound thus forcibly extorted makes a robbery.

> Lastly, the taking must be by force or a previous putting in fear which makes the violation of the person more atrocious than privately stealing; for according to the maxim of the civil law, *"Qui vi rapuit, fur improbior esse videtur."* This previous violence or putting in fear is the criterion that distinguishes robbery from other larceny; for if one privately steals six pence from the person of another, and afterwards keeps it by putting him in fear this is not robbery for the fear is subsequent; neither is it capital, as privately stealing being under the value of twelve pence.[3]

Thus we can see that from the beginning, criminal sanctions, including the ultimate one, were not assigned to robbery in an attempt to protect valuable property. Rather, robbery was treated as a capital offense because it placed human life in danger and exposed innocent victims to inhumane terror. Although the other forms of larceny were graded relative to the amount of currency involved, there was no need to so divide robbery because threats to a single human life justified the ultimate penalty.

This state long ago abandoned capital punishment. In doing so, however, we meant to demonstrate our increased reverence for human life and not an indifference to the victims of violent crime. It is, therefore, quite appropriate that we treat offenses that were traditionally capital ones with the greatest possible gravity within our own system of punishment. The robber who steals $10,000 from a one-teller bank is no more culpable than the robber who steals $50 from a convenience store with one employee. It is more heinous, however, to place numerous employees and customers in fear for their lives.

I am aware that there are numerous recent cases that have held, in a variety of factual and statutory contexts, that incidents which involve either multiple takings or multiple victims were single acts of robbery. I do not find these cases controlling, however, both because some cases involve different statutory schemes with different public policy objectives and because other cases appear to result from confusion concerning the nature of the crime of robbery or summary reliance on prior rulings.

For example, in *United States v. Canty,* 469 F.2d 114 (D.C.Cir.1972), a federal court held that it was impermissible under double jeopardy to charge those committing a bank robbery both with violation of the federal bank robbery statute and with violation of the District of Columbia's criminal

---

**3.** Blackstone, *4 Commentaries* *242. (The Latin phrase can be translated as, "He who has taken by force appears the more iniquitous thief.")

code. The underlying premise of that case, however, was stated quite succinctly by the court when it wrote: "The federal bank robbery statute establishes a comprehensive scheme for prosecuting and punishing persons who rob federally insured banks." *Id.* at 127. The reason that the federal government has established its own scheme for the prosecution of bank robbers is because of its concern with the money held in federally insured banks and not because it believed that the rights of the victims of bank robbery were not adequately protected. In light of that statutory purpose, it is quite sensible to rule that the robbery of one bank is a single offense under the federal bank robbery statute.

It is not the case, however, that federal courts are generally reluctant to prosecute for multiple offenses springing from a single transaction. If Congress has made its intention sufficiently clear to impose multiple punishments for some act, the imposition of that punishment has been found to be constitutional. *See United States v. Walsh,* 700 F.2d 846 (2d Cir.1983). In *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1435, 63 L.Ed.2d 715 (1980), the Supreme Court stated that, "[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishment the Legislative Branch has authorized." The test laid out in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) is that proof of each statutory offense must require the establishment of an additional element.

Although these cases do not relate to robbery statutes, they are analogous. The Supreme Court has consistently stated that legislative purpose must be the guiding light in determining the propriety of prosecuting for multiple offenses. The one constitutional limitation would appear to be that an additional fact must be proven to justify a multiple conviction. Although we are operating within a single statute in this case, it is nevertheless the case that an additional element must be proven for each conviction. In order for the appellant to be

convicted of two robberies it must be shown that he placed two individuals in fear and apprehension with the intention of taking money or another thing of value from their person or under their physical control. I feel that requirement was adequately met in the case before us.

Several state courts have also found that only one conviction for robbery was appropriate despite the fact that numerous victims were involved. Perhaps the leading state case espousing this position is *Williams v. State,* 271 Ind. 656, 395 N.E.2d 239 (1979). In that case, the defendant was convicted of four counts of armed robbery resulting from an incident in which he and his accomplice robbed four tellers at a bank. The court recognized this as a case of first impression before it. Because the case involved a bank robbery, the court followed the result reached in *United States v. Canty, supra.* Such reliance is highly questionable. In *Canty,* the District of Columbia Court of Appeals explicitly stated:

> While it may be true that under general theft and robbery statutes, a defendant may be punished under separate counts for taking money from different people in the same transaction, the statute here is not for theft or robbery against the person generally. The crime is *bank* robbery, and the statute is entitled, 'Bank Robbery and Incidental Crime.' There is no doubt here that only one transaction took place and that only one bank was robbed.

*Id.* at 126. In the case before us, we *are* dealing with a statute covering robbery of the person. Therefore, I find the reasoning of *Williams* and its progeny, *see e.g. Rogers v. State,* 272 Ind. 65, 396 N.E.2d 348 (1979), inapplicable to the instant case.

In *State v. Ballard,* 280 N.C. 479, 186 S.E.2d 372 (1972) and *State v. Potter,* 285 N.C. 238, 204 S.E.2d 649 (1974), the Supreme Court of North Carolina held that robbery incidents in which more than one employee was placed in danger while the money of the store was taken were essentially one crime. Both cases rely on the fact that all of the money involved came

from a single source and treat the employees as jointly responsible for the money's custody. Neither case attempts to determine whether the legislative purpose of the robbery statute was primarily to protect persons or property. In *Potter*, however, the court specifically reserved the question of whether such an incident would involve only a single crime of robbery if physical injury were inflicted on any employee. *Id.*, 204 S.E.2d at 659. Thus, the case can be distinguished from the case *sub judice*. Furthermore, the distinction between actual injury and the fear or apprehension of injury makes little if any sense in light of our state's statutory scheme.

In another recent case, a New Jersey court held that one criminal episode of robbery "may not be fractionalized by the state in order to enhance defendant's punishment for a single crime." *State v. Whipple*, 156 N.J.Super. 46, 52, 383 A.2d 445, 448 (1978). In that case, the defendant had robbed a liquor store and at the same time taken the money of the proprietor who was working in the store at the time. Thus, this case is also not relevant to the present circumstance because only one person was placed in jeopardy and the number of endangered victims is the primary focus of our robbery statute.

I am more persuaded by the reasoning found in older cases. In *Novak v. State*, 139 Md. 538, 115 A. 853 (1921), the appellant argued that he could not be indicted for the robbery of a William Crowell because he had already been acquitted for the robbery of Walter Sklom and both charges arose from the same incident. When it was claimed that a truck loaded with 250 cases of liquor had been robbed by the appellant and his accomplices along the railroad in Baltimore County, the court held that the second indictment was proper. The Maryland court wrote:

> If the defendant had been charged in each instance simply with the larceny of the whisky mentioned in the two indictments, the contention now made in his behalf would have greater force. But the larceny was only one of the elements of the robbery of which the defendant has been convicted. He was charged with feloniously assaulting a named individual and taking the whisky from him against his will. It is no answer to such a charge to say that he had been previously acquitted of having taken the whiskey from another person on the same occasion. The robbery charged in the present indictment as having been committed upon Crowell is the occurrence with which the state is here concerned. The evidence upon which the defendant was convicted of that crime might have been wholly insufficient to implicate him in the robbery of Sklom for which he was tried in the former case.

*Id.* Md. at 540–41, 115 A. at 854.

In the case *sub judice* the appellant stands convicted of both charges of robbery. Nevertheless, the jury could have found, based on the evidence, that one or the other of his victims had not been placed in sufficient fear and apprehension to merit a conviction of robbery with regard to that victim. Their unbiased judgment was that two convictions for robbery were appropriate. I believe that both the facts and law support such a verdict.

In *Johns v. State*, 130 Miss. 803, 95 So. 84 (1923) the Mississippi Supreme Court, facing a similar factual situation, reached the same conclusion. The rule of law that they articulated is a sound one: "[T]he rule is that, where two or more persons are robbed at the same time, in one transaction, each robbery constituted a separate and distinct offense, and that a prosecution ... in one case will not bar a subsequent prosecution in the other." *Id.* at Miss. 811, 95 So. 85. The court's citation of McClain on *Criminal Law* is particularly apt:

> It has been said that taking at the same time the several properties of different persons who are put in fear by the same act may be charged as one crime of robbery. But other cases hold, and apparently with better reason, that where the assault is upon several different persons, there will be distinct offenses of robbery committed as to each of them although the transaction is continuous.

1 McClain, *Criminal Law* 459.

In the case before us, it is true that property was not taken from two individu-

als. In fact, no property was taken. However, the legislature has spoken with clarity that attempts to commit robbery are the same offense as the actual completion of a robbery. Because both individuals were assaulted, and because the protection of the person from such assaults is the focus of the robbery statute, I am in agreement with the line of cases that find multiple conviction entirely proper for single incidents of theft or attempted theft involving multiple victims.

Although much of the authority upon which I rely is old case law I note that there is also modern authority in general accord with our position. For example, in *People v. Bartowsheski*, Colo. 661 P.2d 235 (1983) the court stated, "The gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence." *Id.* P.2d at 244.

I would, however, point out that all robberies involving multiple persons would not necessarily entitle the prosecutor to multiple indictments for robbery. In order for a robbery to occur two elements must exist: a person must be placed in fear *and* property must be taken that was in his possession or under his control. Thus, I envisage a situation where a robber enters a store, requires the customers to lie down on the floor, and then takes money or another thing of value from the cashier. Obviously, the cashier has been robbed. However, if nothing of value is taken from the customers, they have been assaulted but not robbed. On the other hand, if the robber removed the wallets and other valuables of the customers in addition to taking the money of the store that was *under the cashier's control*, then there are as many additional robberies as there are customers from whom property was taken.

The appellant in the case before us intended to take property that was in the custody of both of his victims. He applied physical force to one of those victims who now stands permanently maimed, and intimidated the other with his statements and actual demonstration of force. Because the crime of robbery is concerned with protection of the person, and because this court has an articulated concern with the rights of individual victims of crime, I would hold that two separate robberies were committed.

I am authorized to say that Justice McHugh joins this dissent to the extent that it explains the law on multiple, completed robberies, but joins the majority with regard to attempted robberies.