**UNITED STATES, Appellee,**

v.

**Specialist Andrew A. SZENTMIKLOSI, United States Army, Appellant.**

**ARMY 9701049.**

U.S. Army Court of Criminal Appeals.

4 Jan. 2000.

For Appellant: Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Holly S.G. Coffey, JA; Captain Jodi E. Terwilliger–Stacey, JA (on brief).

For Appellee: Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA; Captain Arthur J. Coulter, JA (on brief).

Before CAIRNS, Senior Judge, KAPLAN, Appellate Military Judge, and MERCK, Senior Judge.

## OPINION OF THE COURT

KAPLAN, Judge:

A military judge found the appellant guilty, in accordance with his pleas, of conspiracy to commit robbery, absence without leave, and robbery (two specifications), in violation of Articles 81, 86, and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, and 922 [hereinafter UCMJ].[1] Thereafter, a general court-martial composed of officer members sentenced the appellant to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the adjudged sentence.

This case is before the court for automatic review pursuant to Article 66, UCMJ. We have considered the record of trial, the appellant's three assignments of error, the matters personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and the government's reply thereto. Although we find no merit in any of the assignments of error or the *Grostefon* matters, we have determined that the third assignment of error raises an issue meriting discussion.

## FACTS

The charges, including the two specifications of robbery, of which the appellant was convicted arose out of the actions of the appellant and a co-accused, Staff Sergeant Olival, both serving as Military Police [hereinafter MP] at the time,[2] in perpetrating an armed robbery of the Army and Air Force

---

1. An additional charge of wrongful appropriation of an automobile, in violation of Article 121, UCMJ, was dismissed by the military judge on multiplicity grounds prior to the entry of pleas. When the trial counsel indicated that she would offer no further evidence, not guilty findings were entered by the military judge as to additional charges of communication of a threat to injure and receiving stolen property, both violations of Article 134, UCMJ.

2. Two other individuals, both former MPs, also participated in the conspiracy but did not actively participate in the actual robbery.

Exchange Service [hereinafter AAFES] money courier and his MP escort on 15 March 1997, at Fort Riley, Kansas. During the robbery, the perpetrators stole over $36,-700.00 in cash and injured both the AAFES courier (the appellant sprayed pepper mace in his face) and the MP escort (Olival knocked him unconscious by striking him on the back of the head with a shotgun). The appellant and his accomplice seized the MP escort's weapon and pistol belt and made their getaway by taking the MP sedan in which the victims had been riding. After an exhaustive criminal investigation, the crime was recognized as an "inside job," the perpetrators were identified, and the stolen money was recovered from Olival's automobile. After a twenty-six day unauthorized absence, the appellant surrendered himself and confessed to his part in the robbery.

## DISCUSSION

This case raises the perplexing issue of whether one or two robberies are committed when the same property is wrongfully taken from two different victims, each of whom has a possessory interest in the property greater than that of the perpetrators. Contrary to the appellant's assertion, our review of this record leads us to the conclusion that two robberies, not one, were committed by the appellant in this case. Had the government chosen to charge the appellant with robbery of the MP escort's weapon and pistol belt or the MP sedan assigned to him, there would have been no question that two separate robberies had been committed. However, the government charged the appellant, instead, with separately stealing, by force and violence, the identical United States currency from both the AAFES courier and the MP escort. In the appellant's motion to dismiss made prior to entry of pleas [3] and in his third assignment of error on appeal, he contends that allowing convictions of two robberies to stand would constitute double jeopardy or

contravene the equity guidance in Rule for Courts–Martial 307(c)(4) discussion, that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges."

At trial, the military judge, relying on the language contained in *Manual for Courts–Martial*, United States, (1995 edition), Part IV, para. 47c(5) [hereinafter *MCM*, 1995] concerning multiple-victim robberies, denied the appellant's motion to dismiss one of the two robbery specifications on multiplicity or unreasonable multiplication grounds. The referenced paragraph provides, "Robberies of different persons at the same time and place are separate offenses and each such robbery should be alleged in a separate specification." The drafters' analysis [4] to the *MCM*, 1995, indicates that the source of this guidance is the decision of our superior court in *United States v. Parker*, 17 U.S.C.M.A. 545, 38 C.M.R. 343, 1968 WL 5414 (1968). In that case, Parker robbed separately identifiable property from two victims at gun point—twenty dollars from one victim, and a watch and twenty dollars from the second victim. Thus, *Parker* is not factually on all fours with the case at bar.

■ It is black letter law that the crime of robbery is a compound offense made up of a larceny accompanied by an assault or threat of injury. *See, e.g., United States v. Smith*, 14 M.J. 68, 70 (C.M.A.1982); *United States v. Chambers*, 12 M.J. 443, 446 (C.M.A.1982). Thus, it might validly be argued that for there to be two robberies, there must be two assaults and two larcenies. In this case, there is no question that there were two assaults—each of the two victims was separately physically injured. The more difficult question, however, is whether or not there were two concurrent larcenies. The guidance found in *MCM*, 1995, Part IV, para. 46c(1)(h)(ii) provides some assistance in resolving this question. This section provides,

---

**3.** We note that following the military judge's denial of this motion to dismiss, the appellant pleaded guilty unconditionally to both specifications alleging the crime of robbery. It could thus be argued that he has waived any entitlement to relief on this issue. *See United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). However, as a matter of judicial discre-

tion, we will not determine this issue on the basis of waiver. *See United States v. Lloyd*, 46 M.J. 19 (1997).

**4.** *See MCM*, 1995, app. 23, Punitive Article 122 analysis, para. 47c(5), at A23–13.

"When a larceny of several articles is committed at substantially the same time and place, it is a single larceny even though the articles belong to different persons." It would seem logical that if the wrongful taking of several articles belonging to different persons at the same time and place constitutes a single larceny, then, *a fortiori*, the taking of the same article belonging to different persons must also be one larceny. It may also be logical to conclude that if there was only one larceny, then there was only one robbery. There is a weakness in this argument, however. In applying this analysis to the compound offense of robbery, it improperly over-quantifies in criminal magnitude the unlawful taking of property. The far more egregious aspect of robbery is its assault component involving, as it does, the threat or actual application of violence to a human being. For this reason, we reject this approach.

We are convinced that the point of law our superior court intended to establish in *Parker* is that robbery is preeminently a crime of violence against a person, and in crimes of violence the permissible unit of prosecution is the number of victims (persons) assaulted, rather than the number of larcenies committed. This would appear to be the prevailing rule in the United States. *See, e.g.,* 22 C.J.S. § 263 (1989 & Supp.1997).

Generally, where an accused takes property from two people who own property, two separate robberies have occurred even if they are part of the same transaction ..., the unit of prosecution is the person assaulted and robbed, not the taking at a single time and place, so that where multiple victims are subjected to armed robbery by one individual multiple punishments are permitted.

*Id.; accord, Clay v. Commonwealth,* 30 Va. App. 254, 516 S.E.2d 684 (1999); *Sullivan v. Commonwealth,* 16 Va.App. 844, 433 S.E.2d 508 (1993); *Camacho v. State,* 825 S.W.2d 168 (Tex.App.—Fort Worth 1992); *Commonwealth v. Rozplochi,* 385 Pa.Super. 357, 561 A.2d 25 (1989); *Commonwealth v. Dooley,* 332 Pa.Super. 227, 481 A.2d 336 (1984); *Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879 (1967).[5]

Without question, the appellant and his coconspirators intended to rob both victims by force and violence, and they carried out their intended crimes. They knew, just as the record clearly demonstrates, that the MP escort had a duty to protect the courier and the money the courier was transporting. Under such circumstances, although neither the MP nor the courier had title to or ownership of the money, they both had a greater right to possession than did the appellant and his accomplice. Both victims had joint possession and control over the money, and both victims were subjected to force and violence in order to overcome their resistance and to deprive them of the property lawfully under their control. The military judge was correct in following the *MCM*, 1995, guidance

5. We find far less persuasive the theory that robbery is merely an aggravated larceny, i.e., a very serious crime against property. *See, e.g., Keeling v. State,* 810 P.2d 1298 (Okla.Crim.App.1991)(vacating one of two robbery convictions arising from a single incident in which store money was taken from two clerks on the basis that all the money belonged to the store); *Rogers v. State,* 272 Ind. 65, 396 N.E.2d 348 (1979)(forcible taking of a principal's money from multiple agents is only one robbery); *see also State v. Collins,* 174 W.Va. 767, 329 S.E.2d 839 (1984); *State v. Faatea,* 65 Haw. 156, 648 P.2d 197 (1982); *State v. Potter,* 285 N.C. 238, 204 S.E.2d 649 (1974). While we find more persuasive the cases that treat the assault and larceny aspects of robbery as having equal weight, we believe these cases fail to properly recognize the greater import of the assault element as compared to the larceny element. *See, e.g., State v. Larkin,* 70 Wash.App. 349, 853 P.2d 451 (1993); *State v. Johnson,* 48 Wash.App. 531, 740 P.2d 337 (1987)(when the only items stolen were items for which each clerk had equal responsibility with the other clerks, the robbery amounted to one robbery); *see also United States v. Towns,* 39 C.M.R. 372, 1968 WL 5089 (A.B.R.1968)(dicta); *cf. United States v. Ventegeat,* 20 U.S.C.M.A. 32, 42 C.M.R. 224 (1970); *State v. Rupe,* 101 Wash.2d 664, 683 P.2d 571 (1984); *Jackson v. State,* 209 Ga.App. 53, 432 S.E.2d 649 (1993); *Stark v. Commonwealth,* 828 S.W.2d 603 (Ky.1991); *State v. Mills,* 671 S.W.2d 437 (Mo.App.1984); *People v. Wakeford,* 418 Mich. 95, 341 N.W.2d 68 (1983); *Commonwealth v. Levia,* 385 Mass. 345, 431 N.E.2d 928 (1982); *State v. Perkins,* 45 Or.App. 91, 607 P.2d 1202 (1980)(when only one set of a principal's monies is taken from multiple agents, the robber may only be punished for the one ultimate criminal objective); *State v. Dillman,* 34 Or.App. 937, 580 P.2d 567 (1978).

and finding that charging, convicting, and sentencing the appellant for two robberies did not constitute double jeopardy or an unreasonable multiplication of charges.

## DECISION

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CAIRNS and Senior Judge MERCK concur.